Argued February 28, affirmed March 19, 1973

## STATE OF OREGON, *Respondent, v.* JEAN ELLEN KELLEY (No. 72 1977), *Appellant.*

507 P2d 837

*Gary D. Babcock*, Public Defender, Salem, argued the cause and filed the brief for appellant.

*Thomas H. Denney*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

Defendant was convicted after a bench trial of being a felon in possession and control of a concealable firearm. ORS 166.270.[1] The court suspended the imposition of sentence and placed defendant on three years' probation.

---

[1] ORS 166.270 provides:

"Any unnaturalized foreign-born person or any person who has been convicted of a felony against the person or property of another or against the Government of the United States or of this state, or of any political subdivision of this state, who owns, or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person, or machine gun, shall be punished upon conviction by imprisonment in the penitentiary for not more than five years."

Defendant's sole assignment is that the trial judge erred in overruling her motion for judgment of acquittal, in that the state allegedly failed to introduce sufficient evidence to enable the trier of fact to find beyond a reasonable doubt that defendant ever owned, possessed, controlled or had in her custody the subject weapon.

On May 3, 1972, at about 2 p.m., three police officers, Veteto, Foster and Mauch, went to the residence of defendant to serve a warrant of arrest upon her for illegal sale of dangerous drugs. When the first officer reached the front door, he knocked or rang the doorbell. Defendant answered and opened the door. After defendant stepped back the officer proceeded into the house and read the warrant to her. Defendant asked to go to the bedroom to put on some shoes. The officer consented, but followed her down the hallway. The defendant stepped inside the bedroom and called to her husband, telling him she was being arrested. Meanwhile the other officers positioned themselves in the living area. Defendant reentered the hall and was followed closely by Officer Veteto. Defendant's husband followed them into the living room.

State Police Officer Dodd who had been called to transport defendant to jail had meanwhile arrived. As Officer Veteto was advising defendant of her rights and about to inform Officer Dodd of the charge so that he could take defendant to jail, Officer Foster interrupted by saying something like, "Take a look at what I found" or, "Here is a gun." As he held up the pistol, which had been on top of a table in the living room, defendant spoke up, saying, "Oh, that's my gun." Overlapping her comment her husband said, "Oh, no. That's my gun. I bought it for her for protection."

Officer Veteto then advised defendant that he would hold the weapon and she would be charged with the weapon charge.

The weapon found was a loaded, .25 caliber automatic pistol. Testimony disclosed that defendant's husband did in fact purchase the gun in Junction City on September 1, 1970, and that it was registered in his name.

Defendant had previously been convicted in California in December 1966 of grand theft from the person, and was placed on three years' probation.

Officer Green testified that on January 22, 1972, while working as an undercover narcotics officer, defendant told him that she "and another subject usually packed guns." This information and defendant's felony conviction were known to the officers prior to going to arrest her. The husband testified that the gun was in his control and that defendant had handed it to him the night before the arrest. He did admit, however, that guns were accessible to his wife (defendant) for protection. Defendant took the stand and denied that she had ever possessed the weapon or that she had acknowledged ownership in the presence of the officers. A friend of defendant testified that defendant had said: "That is my husband's gun."

 In a prosecution under ORS 166.270 the question is not simply one of ownership but may be instead an issue of "possession * * * custody or control * * *." Possession may be joint or individual, and two or more persons may be in possession when they have the power to control and intent to control jointly. *See, State v. McHenry*, 207 Iowa 760, 223 NW 535 (1929). Further, one may exercise control over what is not in his physical possession. *State v. Clipston*, 3 Or App

313, 473 P2d 682 (1970). To constitute possession of a concealable weapon under ORS 166.270, it is sufficient that defendant have constructive possession and immediate access to the weapon to bring her within the statute. *State v. Roisland,* 1 Or App 68, 459 P2d 555 (1969).

■ Circumstantial evidence is sufficient to prove possession in violation of ORS 166.270. *State v. Miller,* 238 Or 411, 395 P2d 159 (1964); *State v. Smith,* 3 Or App 606, 475 P2d 433, Sup Ct *review denied* (1970).

In the case at bar where police found the weapon in plain view in close proximity of defendant, and there was credible evidence that defendant voluntarily acknowledged that it was hers (her admission was corroborated by three police officers who were at the scene), an inference that defendant was in possession or control of the weapon was justified.

■ Unlike *State v. Crenshaw,* 6 Or App 55, 486 P2d 581 (1971), cited by defendant, where there was no proof of the corpus delicti of the crime of homicide, here the evidence of the commission by defendant of the crime charged, although disputed by witnesses for defendant, was both direct and circumstantial. We conclude that this evidence was sufficient on the issue of defendant's possession to sustain the conviction.

Affirmed.