Argued May 24, reversed and remanded October 4, reconsideration denied
November 10, 1976, petition for review allowed March 15, 1977
See later volume of Oregon Reports

# STATE OF OREGON, *Appellant,*
## *v.*
# JAMES W. GILBERT, *Respondent.*

## (Nos. 75-2603, 75-2604, 75-2605, 75-3066, 75-3068,
## CA 5436, 5437, 5438, 5439, 5440)

555 P2d 31

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*William F. Frye,* Eugene, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton and Lee, Judges.

LEE, J.

**LEE, J.**

Under authority of ORS 138.060(1) the state appeals from orders entered by the circuit court dismissing five separate indictments, each of which charged defendant with the theft of a different firearm owned by a different individual in violation of ORS 164.055.[1] Motions for the dismissal of those indictments had been submitted by defendant following his trial on a sixth, charging him with the theft of an additional firearm owned by yet another individual, which had resulted in a verdict of not guilty and the entry of a judgment of acquittal.

The motions were based upon the contention that each of the six indictments returned by the state[2] charged defendant with "the same crime," and that further prosecution on any one or more of the five outstanding, following his acquittal on the sixth, would place him "in jeopardy twice for the same offence [sic]" in violation of both Art I, § 12 of the Oregon Constitution and the Fifth Amendment to the United States Constitution.

Because it is within the legal authority of the legislature to establish the parameters of an offense as it sees fit, the question of whether a specific act or "course of conduct" amounts to the commission of one or several crimes must ultimately be resolved by reference to the statutes defining the substantive crime or crimes allegedly involved, and to the legislative intent behind their enactment.[3]

---

[1]
"(1) A person commits the crime of theft in the first degree if, by other than extortion, he commits theft as defined in ORS 164.015; and
"* * * * *
"(d) The subject of the theft is a firearm or explosive * * *." ORS 164.055(1)(d).

[2] A total of eight indictments were actually returned against defendant, Nos. 75-2601 through 75-2606 being returned on May 27, 1975 and Nos. 75-3066 and 75-3068 on June 20, 1975. Two of those indictments Nos. 75-2602 and 75-2606, are not in issue here although the nature of their disposition is not apparent from the record.

[3] *State v. Welch,* 264 Or 388, 505 P2d 910 (1973); *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971).

[ 3 ]

As noted above, the indictments involved here each charged defendant with the violation of ORS 164.055 which both describes the circumstances under which a "theft" will be punishable as "theft in the first degree," and incorporates the general definition of the crime of theft found in ORS 164.015. Designed to eliminate "meaningless" technical distinction which had been the source of recurring problems related to the charging and proof of the correct crime in a case falling somewhere within the general category of larceny-related offenses,[4] ORS 164.015 which was enacted in 1971 as part of a comprehensive revision of Oregon's criminal code now provides that:

"A person commits theft when, with intent to deprive another of property or to appropriate property to himself or to a third person, he:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof; or

"(2) Commits theft of property lost, mislaid or delivered by mistake as provided in ORS 164.065; or

"(3) Commits theft by extortion as provided in ORS 164.075; or

"(4) Commits theft by deception as provided in ORS 164.085; or

"(5) Commits theft by receiving as provided in ORS 164.095."

Enacted at the same time as ORS 164.015, ORS 164.025—entitled "Consolidation of theft offenses; pleading and proof"—in turn provides:

"(1) Except for the crime of theft by extortion, conduct denominated theft under ORS 164.015 constitutes a single offense.

"(2) If it is an element of the crime charged that property was taken by extortion, an accusation of theft must so specify. In all other cases an accusation of theft is sufficient if it alleges that the defendant committed theft of property of the nature or value required for the commission of the crime charged without designating

---

[4] Oregon Criminal Code of 1971, 166-67, Commentary to ORS 164.015 (1975 ed).

the particular way or manner in which the theft was committed.

"(3) Proof that the defendant engaged in conduct constituting theft as defined in ORS 164.015 is sufficient to support any indictment, information or complaint for theft other than one charging theft by extortion. An accusation of theft by extortion must be supported by proof establishing theft by extortion."

We were called upon to interpret these statutory provisions for the first time in *State v. Jim/White,* 13 Or App 201, 508 P2d 462, Sup Ct *review denied* (1973), and held that by their adoption the legislature had defined "a single criminal act, substantial interference with property rights or unauthorized control of property, by describing the ways by which such an act [could] be committed * * *." 13 Or App at 218. As so defined, a defendant may "substantially interfere" with the property rights of another or "control without authorization" the property of another, thereby committing the crime of "theft," in a number of different ways: by taking, appropriating, obtaining or withholding property from its owner (ORS 164.015(1)), by taking control of property known to have been lost, mislaid or delivered under a mistake (ORS 164.015(2)), by extorting property from another (ORS 164.015(3)), by "deceiving" another out of his property (ORS 164.015(4)), or by "receiving" property known to be the "subject of theft" (ORS 164.015(5)).

Under these statutes the commission of a single "crime" may be established by proof that a defendant has employed any one or more of these enumerated methods to substantially interfere with or control without authorization the property of another.[5] Thus,

---

[5]Based upon this analysis the court proceeded to hold (1) that an indictment generally charging a defendant with "theft" without also describing in any detail the nature of the proscribed conduct upon which it was based would be sufficient to apprise the defendant of the "nature and cause of the accusation against him * * *" as required by Art I, § 11 of the Oregon Constitution and the Sixth Amendment to the United States Constitution, and (2) that with the exception of the case in which a defendant is specifically charged with theft by extortion, the state is not

a defendant found to have taken, appropriated or received at different times different items of property owned by different individuals may be convicted for the commission of multiple "crimes," each taking, appropriating or receiving constituting a separate "interference with" or "unauthorized control over" the property of another. Where, however, a defendant *simultaneously* takes or receives unlawfully different items of property owned by different individuals he has, by engaging in a single incident of proscribed conduct, committed only one crime.[6] Similarly, a defendant who simultaneously "withholds"—i.e., possesses—stolen items owned by different individuals is guilty of a single act of unlawful interference with the property rights of others, constituting but one offense.[7]

At the time of the hearing below on defendant's motions to dismiss, the state did, in fact, inform the court that it was prepared to prosecute the five indictments involved on the theory that each was based upon a separate act of "receiving" occurring at a different time. Defendant argued at that time, and continues to do so here, that because the state chose to proceed against him at his first trial specifically on the

---

required to choose a "theory of prosecution"—to choose, for example, whether it will attempt to establish the commission of a theft by proving an illegal taking or appropriation as opposed to an act of deception or an unlawful receiving—either prior to or during the course of trial. *See also State v. Davis,* 13 Or App 225, 508 P2d 471, Sup Ct *review denied* (1973).

[6] *State v. Niehuser,* 21 Or App 33, 533 P2d 834 (1975); *State v. Clark,* 9 Or App 530, 497 P2d 1210 (1972).

[7] *State v. Dechand,* 13 Or App 530, 538, 511 P2d 430 (1973). This court has also consistently held that where a defendant violates ORS 167.207—a "comprehensive" statute analogous to ORS 164.015 proscribing "criminal activity in drugs"—by simultaneously possessing two different "dangerous drugs," his conduct constitutes only one, not two, crimes. *State v. Allen,* 25 Or App 57, 548 P2d 169, Sup Ct *review denied* (1976); *State v. Gill,* 24 Or App 863, 547 P2d 166, Sup Ct *review denied* (1976); *State v. Homer,* 22 Or App 328, 538 P2d 945, Sup Ct *review denied* (1975); *State v. Morales,* 21 Or App 827, 537 P2d 109, 22 Or App 470, 539 P2d 1112, Sup Ct *review denied* (1975).

theory that he had committed an act of "theft by withholding" by unlawfully "possessing" the firearm described in the indictment, it is now foreclosed from prosecuting the outstanding indictments on any alternate theory. Because, as we noted above, the "withholding" of different items owned by different individuals at the same time constitutes one "theft," and because there is no dispute about the fact that defendant simultaneously "withheld" all the firearms described in the six indictments, adoption of defendant's argument would mean that the state is now barred altogether from going forward on the remaining indictments. We cannot, however, accept in its entirety defendant's view.

■ Assuming that the state did prosecute the original case exclusively on a theory of theft by withholding,[8] we agree that defendant is now immune from further prosecution for the crime of illegally withholding the firearms described in the remaining five indictments. The state is not, however, deprived of the option of proceeding against defendant for the *separate crimes* of "receiving" those same firearms at separate and distinct times as a consequence of that tactical decision in the first prosecution. The court below erred, therefore, in dismissing the outstanding indictments; the state should be permitted to prove, if it can, that by receiving different stolen items at different times the defendant committed identifiable acts of "unauthorized control over property," other than by withholding, amounting to separate violations of ORS 164.015.

---

[8] In his brief to this court defendant has indicated that he was taken to trial on the theory that the crime of theft had been committed by his "possession" of stolen property, that the state put into evidence at that trial all of the property described in all six indictments, that the state offered no evidence as to when the various items of property came into his possession, and that the state requested and the court gave jury instructions "embodying" the theory of theft by possession. The state has not specifically denied any of these allegations. The record before us does not, however, include either the arguments made by the parties at the time of defendant's trial or the instructions given by the court to the jury at that time.

There is, however, one final point requiring comment. In *State v. Brown,* 262 Or 442, 497 P2d 1191 (1972), the double jeopardy provision of the Oregon Constitution was interpreted as requiring that all charges of crimes arising out of the same "transaction" be prosecuted in one case at the same time. Based upon that holding, this court suggested in *State v. Bishop,* 16 Or App 310, 518 P2d 177 (1974), that where a prosecutor becomes aware of multiple charges facing a single defendant and is uncertain about whether those charges grew out of a single transaction, a timely motion to consolidate for trial should be made. By opposing or consenting to the proposed consolidation the defendant himself is able to make an election as to whether he will be subjected to a single trial or separate trials; that election, this court reasoned, will constitute a waiver of any objections the defendant might otherwise have had to the procedure ultimately employed.[9]

On June 11, 1975, prior to defendant's trial on indictment No. 75-2601, the state did, in fact, make a motion to consolidate all pending indictments, including those numbered 75-2601, 75-2603, 75-2604 and 75-2605 now in issue. That motion was opposed by defendant and, based on that opposition, denied by the court. As a result, there remains no "double jeopardy" bar to further prosecution on indictment Nos. 75-2603, 75-2604 and 75-2605. The state's motion for consolidation did not, however, refer to indictment Nos. 75-3066 and 75-3068 which were not returned until June 20, 1975. If the crimes—i.e., the receiving of the firearms described—charged in those indictments arose out of the same transaction as that charged in indictment No. 75-2601, and assuming that the prosecutor was aware of the facts underlying the charges incorporated into indictment Nos. 75-3066 and 75-3068 at the time of the prosecution on indictment No. 75-2601, and that all the indictments could have been tried in the same

---

[9]This procedure was specifically endorsed by the Supreme Court in *State v. Boyd,* 271 Or 558, 533 P2d 795 (1975).

court, further prosecution on indictment Nos. 75-3066 and 75-3068 would be impermissible. Based upon the state of the record before us, however, we cannot ascertain whether the offenses charged in indictment Nos. 75-2601, 75-3066 and 75-3068 actually did arise out of the same transaction; that question must be resolved by the trial court, applying the standards set forth in *State v. Boyd,* 271 Or 558, 533 P2d 795 (1975), after the parties have had an opportunity to address themselves specifically to that issue.

Reversed and remanded.

**SCHWAB, C. J.,** dissenting.

The five indictments here in question all allege theft "on or about the 26th day of March 1975." Apparently concluding the date alleged in the indictments is meaningless, the majority holds the state is entitled to prove receipt of different firearms on different dates, and that such proof would establish five different crimes, exposing defendant to the possibility of 25 years' incarceration. I disagree.

I

There is an even more serious inconsistency in this record, ignored by the majority, than the difference between the date alleged in the indictment and the dates the state now plans to prove the "crimes" were committed. At the outset of the hearing on the motion to consolidate, the prosecutor volunteered:

"* * * I believe the evidence will show that the cases relate exclusively to possession of stolen property, probably on a theft by receiving theory. All of the property was taken into custody by the burglary team in Lane County on the same date at the same location [defendant's home] under the same circumstances * * *."

Throughout the balance of this hearing, the prosecutor consistently stated he was proceeding on a theory of simultaneous possession of stolen property.[1]

---

[1] I agree with the majority's holding that the simultaneous possession of stolen property constitutes one violation of the theft statutes, not as many crimes as there are items of property, nor as many crimes as there are owners of property.

At the subsequent hearing on the motion to dismiss, conducted after defendant had been tried on Indictment No. 75-2601, the state made a substantially different presentation—that different crimes were involved because the defendant received the stolen firearms on different dates. This additional evidence had come to the state's attention between the two hearings before the trial court by way of defendant's own testimony during the trial of Indictment No. 75-2601.

I would hold that the prosecution is bound by its earlier pronouncement about the nature of the "charges" against defendant, i.e., a theory of simultaneous possession of stolen property. A large body of law forbids one litigant from shifting position to the other's detriment. This law is usually collected under the general heading of estoppel; it could as well be collected under the heading of fundamental fairness.

Here the state has substantially shifted position during the course of litigation from, as the majority puts it, a theory that would only justify one trial, conviction and sentence (*see* footnote 1, *supra*) to a theory that justifies numerous trials, convictions and sentences. And the detriment to defendant is apparent. After having been told the state was proceeding on its initial theory, defendant elected to testify at the trial on Indictment No. 76-2601; had defendant instead been told the position the state now wants to assert, it is readily conceivable that he would not have testified.

Under these circumstances, it seems fundamentally unfair to me to permit the state, using information derived from defendant's testimony, to now present a substantially different case in the five trials the majority holds the defendant must face.[2]

---

[2]Moreover, I note that the majority's disposition violates at least the spirit of the constitutional rule that no person can be compelled to incriminate himself.

Under this holding, I propose, it would not be necessary to reach the abstract question of whether defendant's alleged conduct is punishable as one or more crimes.

## II

If, however, this question were reached, I would hold that defendant's conduct, if proved, constitutes only one crime. My position, simply stated, is that there is no such crime in Oregon as receiving stolen property, because *State v. Jim/White,* 13 Or App 201, 508 P2d 462, Sup Ct *review denied* (1973), holds that the word "receiving" could be eliminated from our theft statutes without any change in the definition of the crime.

I generally agree with the majority's methodology: the question of whether defendant's conduct constitutes one crime, as held by the trial court, or at least five crimes, as held by the majority, is one of statutory construction.[3] *See generally,* Annotations, 53 ALR3d 398 (1973); 37 ALR3d 1407 (1971); 18 ALR 1077 (1922).

The substantive crime here in question, first-degree theft, is defined in ORS 164.055, which contains a cross-reference to ORS 164.015, which, in turn, contains a cross-reference to ORS 164.095. The latter two statutes do refer to "theft by receiving," suggesting that each act of receiving might have been intended to be a distinct offense.

However, it is impossible to so construe these statutes without overruling *State v. Jim/White, supra.* In that case this court held:

"* * * [T]he legislature has defined a single criminal act, substantial interference with property rights or

---

[3]The state's opening and reply briefs discuss at length whether the one-crime versus several-crimes question should be resolved by the "same-evidence" test or the "same-transaction" test. My answer is neither. Those doctrines have nothing to do with interpretation of statutes defining crimes.

[ 11 ]

unauthorized control of property, by describing the ways by which such an act can be committed. ORS 164.015(1) is a broad description of that act. An examination of the language of ORS 164.015(1) indicates that the legislature is not talking about separate acts that are included within one offense. It is referring to one single act that is described by the use of four words with definitions that are overlapping * * *. Thus, while ORS 164.015(1) describes 'theft' by using four words, the effect is clearly to define one single concept. *See Cameron v. Hauck,* 383 F2d 966 (5th Cir 1967), *cert denied* 389 US 1039 (1968).

"ORS 164.015(2), (4) and (5) [which includes a reference to 'theft by receiving'] are merely refined descriptions of acts that are already embraced within the description of theft contained in ORS 164.015(1) * * *. ORS 164.095, theft by receiving, is another refinement of the words 'withhold' and 'appropriate' used in ORS 164.015(1). Thus, ORS 164.015(2), (4) and (5) add no new elements to the crime of theft; they are merely definitions of terms that are used in ORS 164.015(1).

"The minutes of the Criminal Law Revision Commission Subcommittee No. 1 indicate that the drafters of the code felt that all acts of theft were encompassed within the definition of ORS 164.015(1) but that ORS 164.065, 164.085, and 164.095 were necessary to insure that it would be clear to the courts that such acts as were described therein were intended to be included within the definition of theft * * *." 13 Or App at 218-19.

Under this analysis, the conclusion is inescapable that separate acts of receiving stolen property are irrelevant.

The majority at least cites *Jim/White* and, without stating reasons, concludes that each act of receiving stolen property is a separate "interference with" or "control over" the property of another. 27 Or App at 5. But receipt of property is not something distinct from the control over it which follows; receipt is merely the onset of control. And I fail to see how the person who receives stolen property is substantially interfering with the rights of the owner.

*Jim/White* and *State v. Boyd,* 271 Or 558, 533 P2d

795 (1975), suggest that the real essence of Oregon's crime of theft is illegal possession. In *Boyd,* a theft charge "was submitted to the jury upon the theory that defendant had committed theft solely by virtue of having retained and concealed" stolen property. 271 Or at 561. The Supreme Court stated:

> "* * * Once unlawful possession of goods, without more, is recognized as criminal conduct, there is no reason for fragmenting the criminal conduct into as many parts as there are different items of property, however acquired. If a defendant is charged with possession of drugs, some of which had been acquired at one time and the rest at another time, it would seem clear that he would be entitled to object to multiple prosecutions. There would be no reason other than harassment of the defendant for the state to divide the condition of possession into parts and prosecute separately on each * * *." 271 Or at 570-71.

I find this rationale controlling, with one minor qualification: I would hold that the hypothetical defendant who acquired illegal drugs at different times would not only be able to object to multiple prosecutions, he would be entitled to object to multiple charges on the grounds that his conduct only constituted one crime. Otherwise, the defendant who acquired two small quantities of drugs at different times would face twice the potential penalty as a defendant who possessed a greater amount of drugs acquired at the same time.

Exactly the same problem arises under the theft statutes. Is it possible that the legislature intended that the "fence" who acquires two small stolen items on different dates be liable for twice the penalty as a thief who takes a million dollars in a single act? I think not, and therefore dissent.