Argued and submitted February 18, affirmed and remanded for
resentencing May 4, 1981

## STATE OF OREGON,
*Respondent,*

*v.*

## NORMAN RICHARD NORMILE,
*Appellant.*

(Nos. 10-79-06665, 10-79-09744, 10-79-11739,
CA 17890, 17891, 17892)
(Cases Consolidated)

627 P2d 506

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

**GILLETTE, P. J.**

Defendant appeals from the judgments entered on his convictions in three separate criminal cases involving distinct incidents. The cases have been consolidated for purposes of appeal. Rule 6.30, Rules of Appellate Procedure. In case number 10-79-06665, defendant was charged with and convicted of being an Ex-convict in Possession of a Concealable Firearm, ORS 166.270, and Driving Under the Influence of Intoxicants (DUII), ORS 487.540. He was sentenced to five years on the first conviction and 270 days on the DUII conviction, the sentences to run consecutively. He was also ordered to pay costs of $468.74. In case number 10-79-09744, the defendant was convicted of Unlawful Possession of a Controlled Substance, ORS 475.992. He was sentenced to a term of 20 years. Finally, in case number 10-79-11739, defendant was charged with two counts of Unlawful Possession of a Controlled Substance, ORS 475.992, and the offense of Driving While Suspended, ORS 487.560. The trial court merged the two convictions for Unlawful Possession and imposed a 20 year sentence for the conviction. Defendant was also sentenced to five months, seven days on the Driving While Suspended charge. The two 20 year sentences in cases 10-79-09744 and 10-79-11739 were ordered to run concurrently with each other and consecutive to the five year sentence imposed in case number 10-79-06665.

On appeal, the defendant assigns as error (1) the trial court's denial of his motion to suppress evidence seized as a result of a warrantless search of his car; (2) the court's failure to grant, on its own motion, a judgment of acquittal on the charge of Ex-Convict in Possession of a Concealable Firearm; (3) the assessment of costs against defendant in case No. 10-79-06665; (4) the imposition of the concurrent 20 year sentences for Unlawful Possession of a Controlled Substance, and (5) the forfeiture of defendant's security deposits in cases 10-79-06665 and 10-79-09744. We agree with defendant's third and fourth assignments of error, but affirm in all other respects.

*1. Motion to suppress - Case No. 10-79-06665*

At approximately 1 a.m. on July 8, 1979, a Eugene police officer, Officer Rainey, stopped the defendant's car

because he thought defendant might be driving while intoxicated. As the car was pulling to the side of the road, the officer noticed that a person seated in the passenger seat briefly ducked down and forward and slid over to the right side of the car. The officer could not tell what she was doing.

At the time of the stop, the defendant was driving. As he stepped out of the car, Rainey saw a clear glass beer bottle with liquid residue on the back seat and loose hand-gun cartridges, believed· to be either .38 or .357 calibre, on the floor of the car near the driver's seat. The officer requested identification from defendant. He could not produce any; neither could he produce any papers showing ownership of the car. According to the officer, both the defendant and his passenger, Susan Woodward, told him that they were in the process of buying the car and had obtained it a month ago. A law student observer, riding with Rainey that night, confirmed these events. Woodward testified that she told the officer that the car belonged to her alone. A subsequent vehicle check showed that the car was registered to a third person.

Meanwhile, a second officer had arrived and was watching Woodward as the defendant was being arrested for driving under the influence. Woodward asked if she could return to the car because she was cold and wanted to smoke a cigarette. The officer allowed her to do so. When Rainey noticed Woodward in the car he asked her to get out again. As she was getting out he observed that a blanket which he had previously seen thrown on the seat was now tucked down in a position toward the floor so that it covered the space between the seat and the floor.

At this point, Rainey decided to search the car. He found two guns underneath the front seat. After discussing the ownership of these guns with Woodward, he asked her if he could search the trunk. According to both officers, Woodward indicated that he could do so. Woodward denied giving consent. When Rainey opened the locked trunk, he found a locked box inside. He opened this box as well. Among other things, the box contained a gun.

Rainey testified that Woodward claimed that she had never seen the box and did not know to whom it

belonged. Rainey asked if he could search the box and she answered that she did not care. Woodward stated that she at first told Rainey that she knew nothing about the box, but later admitted that it was hers. It is not clear when this admission was made. Rainey opened both the trunk and the box with the keys he found on the key ring in the ignition of the car. Woodward was placed under arrest for unlawful possession of a weapon. The car was secured and towed to a controlled lot. Later, a search warrant was obtained for a further search of the car and a suitcase was found in the back seat.

### 2. Search of the car - Case No. 10-79-06665

Defendant contends that the officer lacked probable cause to search the car and that no exigent circumstances existed which would justify an immediate warrantless search. He also claims that Woodward's consent to search the trunk was invalid in that it was tainted by the officer's initial misconduct. Alternatively he argues that, even if her consent to search the trunk was valid, no consent to search the locked box was given.[1] Defendant does not challenge either the initial stop or his subsequent arrest.

A search of an automobile may be made without a warrant if (1) there is probable cause to believe that the vehicle contains contraband, stolen goods, or evidence of a crime, and (2) there are exigent circumstances present which require that the vehicle be searched without obtaining a warrant. *State v. Greene,* 285 Or 337, 340, 591 P2d 1362 (1979).

In this case, the officer testified that he searched the car because of the possibility of additional open containers as evidenced by the bottle he spotted, and because of his concern that there may have been weapons in the car as evidenced by the cartridges lying on the floor, Woodward's furtive gesture during the initial stop and her action in moving the blanket before she exited from the car the

---

[1] Defendant also contends that the initial search of the car cannot be justified as a search incident to an arrest. Because we decide the case on other grounds, we are not required to decide whether the initial search would have been justified on this basis as well.

second time. These facts considered together establish probable cause to believe that the car might contain weapons.[2] *See State v. Crockett,* 34 Or App 1019, 1023, 580 P2d 214 (1978). The officer initially searched under the front seat of the car—the area where, because of Woodward's actions, he suspected weapons might be. It was only after he found the guns that he searched the rest of the car. The belief that weapons might be present, together with the inherent mobility of the car and the fact that Woodward was not yet in custody, justified the immediate search of the car.[3]

 The warrantless search of the trunk and box were also valid. The officer asked for and received Woodward's consent to search the trunk. She then disclaimed any interest in or knowledge of the box found inside. While Woodward took issue with some of the officers' version of what occurred, the trial court found the search was valid. Therefore, we presume that he believed the officers' testimony and not Woodward's. Where, as here, there is sufficient evidence to support the trial court's finding, we are bound by that finding. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). We conclude that the warrantless search of both the car and the trunk, as well as the locked box, was valid. All evidence seized as a result of the search was properly admitted at trial.

### 3. Sufficiency of the evidence - Case No. 10-79-06665

Defendant contends that there was insufficient proof to establish beyond a reasonable doubt his possession of any one of the firearms. At trial, both the defendant and Woodward testified that Woodward had bought the guns and placed them in the car without defendant's knowledge. Woodward indicated that she was later convicted on a charge of unlawful possession of a weapon. Defendant stated that he did not know the guns were in the car until just before being pulled over by Officer Rainey. Defendant admitted that both he and Woodward owned the car, but

---

[2] We do not decide whether the presence of an open bottle of the kind seen here, standing alone, would justify a full scale search of a vehicle for other open containers.

[3] Contrary to defendant's contention, Officer Rainey had not reached a definite decision on whether or not to hold the car. He stated that he had considered the "possibility" of not letting Woodward drive away.

explained that they had been separated for a time and that, during the separation, Woodward had possession of the car; they had reconciled a few days before the incident. In his brief, however, defendant concedes that at least one of the guns under the front seat was situated in such a way that it was easily accessible to the driver of the car.

Possession, as control or the right to control, may be actual or constructive and may be proved by circumstantial evidence. *State v. Nehl,* 19 Or App 590, 592, 528 P2d 555 (1975). Moreover, possession or control may be shared with others. As we stated in *State v. Nehl, supra,*

"* * * evidence that the contraband is found in quarters owned and occupied by the defendant is sufficient to allow the inference that he controls or has the right to control its contents, even though others may be present and may share control jointly. * * *" *Id.,* at 592.

In this case, the defendant jointly owned the car in which the guns were found. This, in addition to the other facts set out above, was a sufficient basis for a trier of fact to find that the defendant owned the guns in question or had them in his possession or under his custody or control. ORS 166.270(1). *See State v. Strong,* 41 Or App 665, 598 P2d 1254 (1979). The trial court did not err in failing to grant a judgment of acquittal on the charge of Ex-Convict in Possession of a Firearm.

### 4. Imposition of costs - Case No. 10-79-06665

Defendant claims that the trial court erred in imposing costs in this case because there is no finding that the defendant is or will be able to pay them. ORS 161.665.[4]

---

[4] ORS 161.665 provides:

"(1) The court may require a convicted defendant to pay costs.

"(2) Costs shall be limited to expenses specially incurred by the state in prosecuting the defendant. They cannot include expenses inherent in providing a constitutionally guaranteed jury trial or expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law.

"(3) The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

In *State v. Fuller,* 12 Or App 152, 504 P2d 1393 (1973), *rev den* (1973), *aff'd sub nom Fuller v. Oregon,* 417 US 40, 94 S Ct 2116, 40 L Ed 2d 642 (1974), we interpreted Oregon's recoupment statute as allowing the imposition of costs only if the defendant has ceased or likely will cease to be indigent. We stated:

"A defendant is not denied counsel while he is indigent, and he is required to repay appointed counsel's fee only if and when he is no longer indigent. If there is no likelihood that a defendant's indigency will end, a judgment for costs cannot be imposed. ORS 161.665(3). If there appears to be the future possibility of ability to repay at the time of sentencing, but the defendant remains an indigent, the judgment for costs cannot be collected. The court retains jurisdiction to determine ability to pay." *Id.,* at 159; *see also State v. Mitchell,* 48 Or App 485, 617 P2d 298 (1980).

In this case, the trial court assessed costs of $468.74 against the defendant. The defendant was ordered to pay them within one year of his release from confinement. The court found that the defendant's "employment has been nil" but stated that

"The defendant is a person who, if he so desired, could work and earn money and pay these, and that if he does not, then it is because of his own voluntary actions that he has not chosen to do so."

The defendant was indigent at the time of sentencing. The security posted by him as bail had been forfeited. Counsel revealed that the defendant had not been employed for some time because of an automobile accident. There was no direct evidence of any past work history. There was also no evidence of his ability or inability to work. The trial judge's opinion that defendant could work may have been justified by the concatenation of facts and circumstances surrounding the judge's personal observations of defendant in the courtroom. Unfortunately, that courtroom aura has not translated itself into a sufficient record before us. We

"(4) A defendant who has been sentenced to pay costs and who is not in contumacious default in the payment thereof may at any time petition the court which sentenced him for remission of the payment of costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or his immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under ORS 161.675."

conclude that the record fails to adequately demonstrate that the defendant's indigency will end. Imposition of costs was error. Because this case is being remanded for resentencing on other grounds, the trial court may take that opportunity to reconsider whether that is an adequate basis for such an imposition.

### 5. Imposition of 20 year sentence - Case Nos. 10-79-09744 and 10-79-11379

 In both these cases, defendant was convicted of Unlawful Possession of a Controlled Substance. He claims that he erroneously received Class A felony sentences on his convictions for offenses which were, in fact, Class B felonies. The maximum sentence for a Class B felony is 10 years. ORS 161.605. The state acknowledges the trial court's error. These cases are remanded for resentencing as Class B felony convictions.

### 6. Forfeiture of security deposits - Case Nos. 10-79-06665 and 10-79-09744

 The trial court forfeited defendant's security deposits in these two cases because of defendant's failure to comply with the conditions of his release agreement. The court found that the defendant initially breached the agreement by committing a new offense, and again by failing to advise the court and the "custody referee" of his correct address and failing to keep in touch with the custody referee. Defendant argues that, because the purpose of bail is to secure defendant's appearance at all court proceedings, forfeiture of security is proper only when the defendant fails to appear. We disagree. ORS 135.280(3) provides in pertinent part that:

> "(3) If the defendant does not comply with the conditions of the release agreement, the court having jurisdiction shall enter an order declaring the security to be forfeited. * * * At any time before or after judgment for the amount of security declared forfeited, the defendant or his sureties may apply to the court for a remission of the forfeiture. The court, upon good cause shown, may remit the forfeiture or any part thereof, as the court considers reasonable under the circumstances of the case."

The statute is clear. A court shall order security to be forfeited whenever a defendant fails to comply with the

conditions of his release agreement.[5] Forfeiture is not limited to a situation in which the defendant fails to appear.

■ Defendant moved for remission of the forfeiture. The court denied the motion. It is undisputed that the defendant had violated the conditions of his release. Under the circumstances presented here, we cannot say that it was an abuse of discretion to deny remission of the properly forfeited amounts.

The imposition of costs in case 10-79-06665 is reversed. Cases 10-79-09744 and 10-79-11739 are affirmed and remanded for re-sentencing. Defendant's convictions are affirmed in all other respects.

Affirmed and remanded for resentencing in part.

---

[5] The legislative history cited by the defendant supports this conclusion. The official comments to ORS 135.265 (provision for security release) states:

"Section 244 sets forth the authority of the magistrate to set a certain amount of money as security for the appearance of the defendant. The defendant can deposit 10 percent of the security amount with the clerk of the court, deposit the full cash amount, or deposit stocks, bonds, real or personal property as security for his appearance. *The defendant will receive a refund of 90 percent of the amount deposited under the 10 percent deposit plan if he appears and performs his responsibilities.* The remaining amount of money will be retained by the clerk for administrative expenses." Criminal Law Commission, Proposed Criminal Code, Final Draft, 143, Commentary to § 244. (Emphasis supplied.)