Edward McINTURFF, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).   (Two Cases).

Nos. 89–70, 89–71.

Supreme Court of Wyoming.

March 15, 1991.

191

Dallas J. Laird, Casper, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., Edwin Wall, Student Intern, Cheyenne, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Edward Bruce McInturff challenges his convictions for violation of W.S. 6–3–403(a)(i) (Cum.Supp.1987), receiving, concealing or disposing of stolen property with a value of more than $500, and for violation of W.S. 6–8–102 (June 1983 Repl.), felon in possession of a firearm. McInturff was sentenced to consecutive terms of nine to ten years imprisonment on the stolen property charge and two to three years for felon in possession of a firearm. We affirm the felon in possession conviction, but reverse on the matter of receiving, concealing or disposing of stolen property.

## FACTS

McInturff's convictions stem from a series of three auto burglaries committed be-

tween May 3, 1988, and May 9, 1988, by his sons John and Ricky McInturff. The vehicles were burglarized while McInturff's sons were staying with him, and the stolen property was brought to McInturff's home, where it was divided amongst the three McInturffs and Edward McInturff's live-in girlfriend, Nancy Reeves. McInturff was arrested after Reeves called local law enforcement authorities on May 31, 1988, and then met with Casper police officer C.J. May and turned over some of the stolen property to him. She testified that she did so because she was afraid of McInturff.

The first vehicle burglarized was a Ford Bronco II owned by Kasper Landman, a special agent with the Wyoming Division of Criminal Investigation (DCI). Landman's Bronco II was burglarized during the night of May 3–4, 1988, while in the Casper Days Inn parking lot. The second vehicle, owned by Mark Horton, and the third vehicle, owned by Ricky Wilson, were both burglarized on the night of May 8–9, 1988, in the Casper Motel 6 parking lot. A .223 calibre semi-automatic rifle, clothing, tapes, radar detectors, a pair of binoculars, a mini-cassette recorder, an overhead projector, fishing rods, fishing tackle, and a variety of other personal items were taken from the vehicles.

On June 9, 1988, the Casper police obtained a warrant to search McInturff's home. Officer May executed the warrant the following day and found in McInturff's closet a cassette case and clothing, including a pair of Tony Llama boots, taken in the auto burglaries.

McInturff was initially charged on June 9, 1988, with unlawful entry and with receiving and concealing stolen property taken from the Kasper Landman vehicle. The receiving or concealing stolen property charge was retained in an information filed on June 30, 1988, but the unlawful entry charge was dropped. On October 4, 1988, the state filed a complaint and affidavit alleging that McInturff was a felon in possession of a firearm. It then moved for consolidation of the felon in possession and the receiving or concealing stolen property informations.

On October 28, 1988, the state filed an amended information that basically recited the language of W.S. 6–3–403(a)(i), and deleted any specific reference to the Landman auto burglary. The amended information was accompanied by a bill of particulars that provided details about McInturff's involvement over a number of days with property stolen from the Landman, Horton and Wilson vehicles. McInturff filed a motion to dismiss the state's amended information, which the court denied in a November 28, 1988 order that also granted the state's motion to consolidate. McInturff stipulated that he had been previously convicted of a violent crime.[1]

McInturff's trial began on December 5, 1988, and he was found guilty by the jury on December 7, 1988. Sentence was pronounced on February 14, 1989.

## ISSUES

McInturff presents four arguments:

1. The trial court erred in allowing the state to amend its information, thereby depriving appellant of his right to due process of law.

2. The court erred in denying the appellant the right to present his defense to the jury in the form of two jury instructions defining "possession" concerning the court's charge of the crime of "felon in possession of a firearm."

3. The court committed plain error in failing to grant a mistrial when the state presented prejudicial and irrelevant testimony on the part of the state's witness Nancy Reeves.

4. The state did not meet its burden of proof by proving beyond a reasonable doubt that the stolen property allegedly in the possession of the appellant had a value in excess of five hundred dollars ($500.00).

---

1. McInturff's adult record includes convictions for auto theft, forgery, escape and bank robbery.

The state responds directly to each argument.

## AMENDMENT OF THE INFORMATION

### Errors

■ We agree with McInturff that the trial court erred when it permitted the amendment. The amended information fails for two reasons. First, the challenged amendment, which came after McInturff's preliminary hearing, effectively charges different offenses in violation of W.R.Cr.P. 9(c).[2] This court applied W.R.Cr.P. 9(c), in *Sanville v. State*, 553 P.2d 1386, 1390 (Wyo.1976), affirming that an information may not be amended if it prejudices the defendant or charges a different offense. The prohibition against charging additional or different offenses implicates the defendant's right to know the charges against him and to prepare a defense to those charges, which is protected by U.S. Const. amend. VI, and Wyo. Const. art. 1, § 10. *See Stewart v. State*, 724 P.2d 439, 440 (Wyo.1986); *State v. Pelkey*, 109 Wash.2d 484, 745 P.2d 854, 855–56 (1987).

In this case the original information charged McInturff with an offense involving receipt, concealment or disposal of property taken from the Landman vehicle. The amended information and the attendant bill of particulars charged him with an offense involving property taken from two additional vehicles. This property was received, concealed or disposed of in acts largely separate from those covered by the initial information. The violations of W.S. 6–3–403(a)(i) involving property taken from the Horton and Wilson vehicles were not mentioned in the original information. As a result they are additional offenses. Even though they were not identified as separate or replacement counts they are effectively a violation of the W.R.Cr.P. 9(c) prohibition against charging additional or different offenses in an amended information.

■ Secondly, the amended information impermissibly combines several separate and independent offenses into one count. Even if there was no issue of improper amendment the information as amended would be void for duplicity on this basis. *Edelhoff v. State*, 5 Wyo. 19, 36 P. 627 (1894). This court said that "[n]o man should be tried or convicted for several offenses when he is charged with but one." *Edelhoff*, 5 Wyo. at 33, 36 P. at 632. That is precisely what happened to McInturff as the result of the amended information and its supplemental bill of particulars.

McInturff, charged with a single count in violation of W.S. 6–3–403(a)(i), was actually convicted for the aggregate of several separate and distinct violations of that statute, as is evident from the state's bill of particulars and proof at trial. Beyond the fundamental problem of duplicity, one obvious result of the stacking of McInturff's offenses is that the value of the property involved in the various offenses more readily totalled enough for the state to obtain a felony conviction. This result is also improper. The only way values of property received or concealed in separate acts can be aggregated in one count is with a charge of simultaneous possession, based on all stolen property in the defendant's possession when he is arrested, or at another time fixed by the evidence. *Sanchez v. State*, 97 N.M. 445, 640 P.2d 1325, 1326 (1982).

### Proper Application of W.S. 6–3–403(a)(i)

■ W.S. 6–3–403(a)(i) offers alternate definitions of, or means of satisfying, the offense of wrongful taking or disposing of property. The statute is violated by an act of receipt *or* concealment *or* disposal of stolen property accompanied by the requisite knowledge. Each such act that is a distinct transaction, complete in itself, may be charged as a separate offense. This obviously extends as well to multiple independent acts meeting any one of the alter-

---

**2.** W.R.Cr.P. 9(c) reads:

(c) *Amendment of information.*—An information may be amended in matter of form or substance at any time before the defendant pleads without leave of court. The court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant have not been prejudiced.

nate definitions, such as multiple receipts or concealments. *Pote v. State*, 695 P.2d 617, 623 (Wyo.1985). The key to analyzing this issue is identification of independent and complete transactions which violate 6–3–403(a)(i). Each distinct transaction should be separately charged and may not be combined with other independent offenses in the state's proof. The record before us reveals that McInturff was involved in several distinct transactions. There were at least two separate receipts, several concealments, and multiple disposals of the stolen property.

■ It may be acceptable to charge a defendant with a single count which employs the language of the statute and does not include any underlying facts, as was done in the amended information. *See Pote; cf. Sanchez.* However, this method then limits the state to proving only a *single* complete act in violation of the statute for each generally stated count, even though, as here, there may have been multiple offenses in separate acts of receipt, concealment and disposal. The state may elect which alternate definition it intends to prove after filing the information so long as its focus can be discerned from "the bill of particulars, opening statement, proofs and instructions to the jury." *Pote*, 695 P.2d at 622.[3] In this case it is not possible to identify the state's focus, as the bill of particulars and the evidence went to all three definitions.

■ As has already been stated, simultaneous possession is a special case. The state may charge McInturff under W.S. 6–3–403(a)(i) with a single count of concealment for all property simultaneously in his possession in violation of the statute, regardless of sources or times of receipt. *State v. Reisig*, 128 Ariz. 60, 623 P.2d 849, 851 (1980); *People v. Harris*, 71 Cal.App.3d 959, 139 Cal.Rptr. 778, 785–86 (1977); *Sanchez*, 640 P.2d at 1326; *State v. Gilbert*, 27 Or.App. 1, 555 P.2d 31, 34 (1976); *State v. Bair*, 671 P.2d 203, 208 (Utah 1983). This charge may be in addition to any charges

for any independent acts of receipt, concealment or disposal of the same property. It is the only basis for aggregating values of property received at different times into one quantum of proof. Because the state did not focus its proof on simultaneous possession it cannot justify combining the values of the property it identified as received, concealed or disposed of by McInturff in violation of W.S. 6–3–403(a)(i).

The state is otherwise limited to charging specific offenses based on independent and complete acts of receipt, concealment or disposal of wrongfully taken property. Without separate counts and a preliminary hearing on all counts, or, in the alternative, another information identifying additional offenses in separate counts, the state should have been restricted to proving a single violation of W.S. 6–3–403(a)(i) as originally charged: by a receipt *or* a concealment *or* a disposal of property from Landman's vehicle. Which alternate definition it chose to pursue should then have been made evident to the defendant to ensure his right to prepare for trial. To permit additional offenses in the amended information, and a stacking of all independent offenses into one count, were errors of law.

### INSTRUCTION ON FELON IN POSSESSION

McInturff chose not to present a defense after the state rested its case. His counsel argued in closing that the state's witnesses, especially Ricky and John McInturff and Nancy Reeves, were not believable, and that the state had not met its burden of proof.

McInturff offered the following instructions:

### Instruction No. A

Mere temporary custody for a limited purpose is not "dominion" or "control" such as to constitute possession.

---

**3.** *See Stewart v. State*, 724 P.2d 439, 440 (Wyo. 1986), for a discussion of the requisites to finding an information sufficient. The review of the information takes into consideration any supplemental bill of particulars.

Instruction No. B

The term "possession" is defined as the power to exercise both dominion and control over an object.

The trial court declined to give McInturff's proposed instructions. It did give the following two instructions on the felon in possession of a firearm charge:

Instruction No. 10

YOU ARE INSTRUCTED that pertinent portions of the Wyoming Statutes provide as follows: Any person who has previously pleaded guilty or been convicted of a violent felony and who uses or knowingly possesses any firearm is guilty of Use or Possession of a Firearm by Person Convicted of a Violent Felony.

Instruction No. 11

YOU ARE INSTRUCTED that the necessary elements of the crime of Use or Possession of a Firearm by Persons Convicted of a Violent Felony are:

1. That on or about May 3, 1988, through May 15, 1988 within the County of Natrona, State of Wyoming;

2. The defendant, Edward Bruce McInturff;

3. Used or knowingly possessed any firearm, and;

4. The defendant has previously pleaded guilty or been convicted of a violent felony.

If you find from your consideration of all the evidence that any of these elements has not been proven beyond a reasonable doubt, then you should find the Defendant not guilty.

If, on the other hand, you find from your consideration of all the evidence that each of these elements has been proven beyond a reasonable doubt, then you should find the Defendant guilty.

■ We recognize that the trial court has a duty to present a correct instruction on the defendant's theory of defense if two requirements are satisfied. *Murray v. State*, 776 P.2d 206, 209 (Wyo.1989); and *Best v. State*, 736 P.2d 739, 744 (Wyo.1987). The proposed instruction must first be suf-ficient to apprise the court of the defendant's theory of defense, and must then be supported by competent evidence. *Id.* We apply this framework to the instructions rejected by the trial court.

■ McInturff used this court's language in *Wells v. State*, 613 P.2d 201 (Wyo. 1980) as the basis for his proposed Instruction A, that "mere temporary custody for a limited purpose is not dominion or control such as to constitute possession." We note initially that McInturff offered no competent evidence of a temporary custody for a limited purpose. In addition, the proposed instruction does not accurately reflect the *Wells* opinion and incorrectly states the meaning of possession for the offense of felon in possession of a firearm.

*Wells* involved the theft of a truck. This court's statement in *Wells* was in response to the defendant's assertion that, because he had been granted permission to sleep in the truck, a bailment was created and he then had possession of the truck as bailee. The opinion rejected Wells' specious claim, finding no prerequisite trust relationship. *Wells*, 613 P.2d at 204. As used in that part of the opinion, possession meant *custody as a bailee*. The opinion otherwise states that a temporary custody for a limited purpose of the sort granted in *Wells* cannot be construed as an "intent to part with *title or possession*." *Id.* (emphasis added). When this language is read in context it is evident that in *Wells* this court used "possession" as a synonym for *ownership* in its consideration of the proof of the larceny. The language is taken out of context and does not apply to the facts of this case.

■ Proof of ownership or a bailment is more than is necessary to establish a violation of W.S. 6–8–102. The object of this statute is not to establish ownership or a trust responsibility, but to keep deadly weapons from the hands of those already convicted of a violent crime. If this objective is to be met, the applicable definition of possession must be the power to exercise dominion or control over the weapon. Possession for purposes of W.S. 6–8–102 is physical control or custody of the weapon,

or immediate access to it. *See People v. Rivera*, 765 P.2d 624, 628 (Colo.App.1988); *State v. Kelley*, 12 Or.App. 496, 507 P.2d 837, 839 (1973). Additionally, any such possession of a weapon by persons convicted of violent felonies must be knowing to be unlawful. *Carfield v. State*, 649 P.2d 865, 871 (Wyo.1982).

Here, the state's witnesses testified that they observed McInturff handle the rifle, hide it in his own closet, remove it on several occasions, and take it with him from the home when he tried to hide it elsewhere or sell it. Two of the witnesses, John McInturff and Nancy Reeves, testified that McInturff discussed his plan to sell the rifle. Nancy Reeves also testified that McInturff told them that it was illegal to have the rifle and that they could all go to prison for possessing it. A fourth witness, Tony Sanchez, testified that he saw John McInturff remove the rifle from his father's bedroom while his father was present.

This evidence abundantly demonstrates knowing exercise of dominion and control over the rifle. Ownership or control equivalent to a bailment are not applicable, and we reject McInturff's attempt to distort the use of the term "possession" in *Wells* to support his claim that he did not possess the rifle. McInturff's proposed Instruction A is incorrect because it misstates what constitutes a violation of W.S. 6–8–102. Trial courts properly reject proposed instructions which are incorrect or inapplicable. *Benson v. State*, 571 P.2d 595, 597 (Wyo.1977).

▪ McInturff's proposed Instruction B, that "the term possession is defined as the power to exercise both dominion and control over an object," is, as just discussed, a correct statement of the law, but is properly rejected for two reasons. First, this is simply a statement of the common usage of "possession," so that an instruction defining the term is not required. *See Durham v. State*, 422 P.2d 691, 692 (Wyo. 1967). Second, there was no competent evidence offered to support Instruction B. Apparently, McInturff's implicit theory of defense was his assertion that he did *not*

have the power to exercise dominion and control over the rifle. Assuming this instruction was sufficient to inform the trial court of his theory of the case, it is not supported by any competent evidence. Instead, all evidence offered on this charge demonstrated that McInturff not only had the power to exercise dominion and control over the rifle, but that he actually did so.

▪ McInturff rested without putting on a defense. He presented no testimony or other evidence demonstrating that he did not have possession of the rifle. The state's witnesses testified otherwise. His attack on the credibility of those witnesses did not by itself provide evidence supporting his claim that he did not have dominion or control. Only one bit of evidence might even conceivably be regarded as equivocal, and that, Tony Sanchez's testimony, suggested only that McInturff may have jointly possessed the rifle with his son John. Joint possession carries with it the power to exercise dominion and control and constitutes a violation of the felon in possession statute. *State v. Normile*, 52 Or.App. 33, 627 P.2d 506 (1981).

McInturff's first proposed instruction is both incorrect and inapplicable. His second proposed instruction was not supported by any competent evidence. Instead, the testimony of the state's witnesses John and Ricky McInturff, Nancy Reeves and Tony Sanchez established McInturff's physical control over the rifle, while McInturff presented no testimony or other evidence to the contrary. Consequently, there was no basis for giving either or both of his proposed instructions as his theory of defense. There was no error; the trial court's refusal to give these instructions was proper.

## PREJUDICIAL AND IRRELEVANT TESTIMONY

McInturff next argues that the trial court erred when it failed to declare a mistrial on the basis of Nancy Reeves' testimony, which he asserts was prejudicial and irrelevant. In particular, he objects to an exchange with the prosecutor in which

Reeves, while explaining why she went to the police, stated that she was afraid of McInturff because he continuously talked about killing people, "and he would sit around bragging about a nigger he cut in half." The defense attorney objected to this statement as rambling, and the objection was sustained. He did not object on grounds of relevance or prejudice, move to strike the statement, request a limiting instruction, or move for a mistrial. Because he did not object to this testimony as prejudicial or move to limit its impact, McInturff now argues that Reeves' testimony constituted plain error.

■ To invoke the plain error doctrine McInturff must demonstrate that a clear and unequivocal rule of law was violated, that he was denied a substantial right, and as a result he has been materially prejudiced. *Barela v. State*, 787 P.2d 82, 83 (Wyo.1990). McInturff argues that Reeves' testimony transgressed W.R.E. 402, Relevant evidence, and W.R.E. 404(b), Other crimes, wrongs or acts.[4] This argument is fundamentally flawed because Reeves was simply explaining why she feared McInturff and so went to the police. The testimony was relevant for that purpose.

■ Rule 404(b) is not applicable because Reeves' statement about her fear of McInturff was not offered to prove his character in an effort to show conforming conduct. McInturff was not even charged with a crime of violence that might lead a prosecutor to try to introduce evidence of prior bad acts for accepted purposes under Rule 404(b), such as establishing motive, opportunity, or intent. This is not an issue of improper character evidence.

■ We are well aware that evidence of other crimes or wrongs has the potential for causing a guilty verdict based on those acts rather than the ones charged, and

have encouraged limiting instructions, "if timely requested." *Grabill v. State*, 621 P.2d 802, 812 (Wyo.1980). No request was made to limit this evidence to the purpose for which it was offered, to explain why Reeves went to the police.

It is unnecessary to consider questions of substantial rights or material prejudice. McInturff's argument fails because he is unable to make the first required showing, that of an obvious transgression of a clear rule of law. Consequently there is no plain error.

## SUFFICIENCY OF THE EVIDENCE OF VALUE

McInturff also attacks the sufficiency of the evidence presented on the value of the stolen property which he was found to have received, concealed or disposed of. In particular he claims that *Weathers v. State*, 652 P.2d 970 (Wyo.1982) requires testimony as to market value and here there was none. In addition McInturff argues that Landman was not the owner of the state property in his vehicle and that Kelly Wilson, Ricky Wilson's wife, did not own property that she testified about, making their testimony on value improper. We have already determined that McInturff's conviction for receipt, concealment or disposal of stolen property must be reversed because separate offenses were improperly aggregated in the amended information, and subsequently in his trial. As a result it is not necessary that we evaluate McInturff's argument about the sufficiency of the evidence used to obtain that conviction.

## CONCLUSION

The trial court did not err in refusing McInturff's proposed instructions on the charge of felon in possession. Additionally, it was not plain error to have denied a

---

**4.** W.R.E. 402 reads, "[a]ll relevant evidence is admissible, except as otherwise provided by statute, by these rules, or by other rules prescribed by the Supreme Court. Evidence which is not relevant is not admissible." Relevant evidence is defined in W.R.E. 401 as, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

W.R.E. 404(b) reads in pertinent part, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

mistrial on the basis of Reeves' testimony. However, the amendment of the information improperly added charges, and it also improperly aggregated several separate violations of the statute into a single count. As a result, McInturff's conviction for receiving, concealing or disposing of stolen property with a value in excess of five hundred dollars must be reversed. Because the stolen property conviction is reversed on this ground it is not necessary for us to consider the question of the adequacy of the state's evidence of values.

The conviction for violation of W.S. 6–8–102 is affirmed. The conviction for violation of W.S. 6–3–403(a)(i) is reversed.

URBIGKIT, C.J., filed an opinion, concurring in part and dissenting in part.

URBIGKIT, Chief Justice, concurring in part and dissenting in part.

I concur with the majority in reversal of the conviction based on the Amended Information. I cannot join, however, in the failure to give appellant's offered theory of the defense instructions involving the felon in possession charge, and consequently dissent.

Possession was an intrinsic factor in the criminal complaint and denial to appellant of an appropriate instruction defining that term had the effect of essentially denying his right to any real defense. Appellant Edward McInturff was first charged with receiving, concealing or disposing of stolen property, unlawful entry which was later dropped, and then several months later, with the felon in possession of a firearm charge, which was added within the consolidated complaint. Involved in the later charge was a Ruger Mini–14 .223 semi-automatic rifle which had been taken by McInturff's two sons, Ricky and John, in an auto burglary.

· At trial, the two sons, as well as Nancy Reeves, McInturff's girlfriend at the time of the burglaries, testified that McInturff took the rifle from his sons and placed it in his bedroom closet. However, another state witness, Tony Sanchez, testified that John McInturff had control over the rifle. Sanchez testified that John McInturff claimed that the rifle belonged to him, that John McInturff had shown him the rifle while at the residence and then hid the rifle in Sanchez's backyard. Sanchez further testified that John McInturff returned the next day and removed the rifle from its hiding place. John McInturff testified he gave the gun to a friend of Ricky McInturff.

McInturff declined to present a testimonial defense in resting after the State presented its case. His defense, according to his counsel's closing argument, was based on the credibility and believability of the witnesses, particularly Ricky and John McInturff and Nancy Reeves, and whether the State had met the requisite burden of proof.

The two instructions quoted in this majority were tendered by McInturff to address the realistic theory of defense that actual possession started with and remained in the hands of the thieves who were co-residents in the house, namely his sons. That issue differentiated, as the extreme, temporary custody by location in the house where he was compared to actual possession when another then claimed right to actual control and dominion. McInturff wanted to distinguish whatever temporary custody he may have achieved, if any, by the temporary handling from the actual possession contended to remain in others. In order to present his defense, McInturff requested theory of defense instructions accurately defining possession which was denied by the trial court.

As authority for his two refused instructions, McInturff relied on *Wells v. State*, 613 P.2d 201 (Wyo.1980). In that case, this court said "[t]he mere giving of temporary custody for a limited purpose is not a surrender of dominion or control as to be a transfer of possession." *Id.* at 204. Other cases in which we construe the meaning of possession are in accord with *Wells*. In *Craig v. Gudim*, 488 P.2d 316 (Wyo.1971), an action by a bankruptcy trustee against homeowners and a bank, this court stated that possession is inclusive of custody but custody is not tantamount to possession. *Id.* at 319. In *State v. George*, 32 Wyo.

223, 231 P. 683 (1924), a larceny case in which the defendant was convicted of stealing sheep, this court said the defendant did not have possession of the sheep simply because they were on his land. *Id.* at 247, 231 P. 683. The defendant had to do some act to indicate his will to subject the sheep to his control before the owner of the sheep lost constructive control of them. *Id.*

In addressing the issue presented here, we apply the following standard:

> In determining whether an instruction in favor of an accused should be given, the evidence must be viewed in a light as favorable to him as is justifiable.

*Noetzelmann v. State,* 721 P.2d 579, 581 (Wyo.1986). The trial court has a duty to present an instruction supporting the defendant's theory of defense, either one offered by the defendant or a similar one, if the instruction is supported by competent evidence. *Smith v. State,* 773 P.2d 139, 141 (Wyo.1989); *Stapleman v. State,* 680 P.2d 73, 75 (Wyo.1984). A jury must be instructed on all material essentials. *Murdock v. State,* 351 P.2d 674, 683 (Wyo. 1960).

At the close of the State's case, McInturff chose to rest. This choice meant the verdict depended on whether the State had met its burden of proof. "One accused of a crime is presumed to be innocent until proven guilty beyond a reasonable doubt, and this presumption applies to every element of the crime charged." *Stuebgen v. State,* 548 P.2d 870, 879 (Wyo.1976) (citing *Christoffel v. United States,* 338 U.S. 84, 89, 69 S.Ct. 1447, 1450, 93 L.Ed. 1826 (1949)). McInturff raised questions in cross-examination and in closing as to the credibility of the three witnesses whose testimony indicated that McInturff had possession of the firearm. McInturff did not dispute the fact that the weapon was in the house where he resided, which was the same house where his sons, the actual thieves, also resided. No other instruction covers the definition of possession, which would have allowed the trial court to refuse his instructions. *Prime v. State,* 767 P.2d 149 (Wyo.1989). The definition of possession was central to McInturff's defense

and the question of whether he was guilty of the felon in possession charge. McInturff was entitled to his instructions defining possession as competent evidence tends to support these instructions.

In denial of instructions which correctly differentiated temporary custody from possession in accord with the established precedent of this court in *Wells,* McInturff was denied opportunity to seek consideration for his theory of defense. Comment by the majority that no evidence existed to support the custody concept elicited in *Wells* is simply not accurate in consideration of the established evidence in this case of who stole the gun, who kept the gun, and then who disposed of the gun—none of which conduct was that of McInturff.

I continue to reject the failure of trial courts to provide defendants with access to their theory of defense through either evidence or instruction. *Ramos v. State,* 806 P.2d 822 (Wyo.1991), Urbigkit, C.J., dissenting. *See also Oien v. State,* 797 P.2d 544 (Wyo.1990); *Thom v. State,* 792 P.2d 192 (Wyo.1990) and *Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896). The reasonableness of McInturff's defense and the appropriateness of application of the rule of *Wells* should have been vested in the fact finding jury and not escarped by the trial court and now buried by this court.

Consequently, I respectfully dissent.