Argued May 22, affirmed in part; reversed in part June 25, 1973

## STATE OF OREGON, *Respondent, v.* LeROY DECHAND (No. 39121), *Appellant.*

511 P2d 430

*John K. Hoover*, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Doyle L. Schiffman*, District Attorney, Roseburg, argued the cause for respondent. With him on the brief was Brian R. Barnes, Deputy District Attorney, Roseburg.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

SCHWAB, C. J.

Defendant was convicted of both counts of the following indictment:

"LEROY DECHAND is accused by the Grand Jury for the County of Douglas, State of Oregon, by this Indictment of the crimes of COUNT I: BURGLARY IN THE FIRST DEGREE COUNT II: THEFT BY RECEIVING IN THE FIRST DEGREE committed as follows

"COUNT I

"The said LEROY DECHAND on or about the 9th day of January A.D. 1972, in the said County of Douglas and State of Oregon, then and there being, did knowingly and unlawfully enter and re-

main in a building, to-wit: the Factory A La Go Go, located at 2455 N.E. Diamond Lake Blvd., Roseburg, county and state aforesaid, with the intent to commit a crime, to-wit: theft, and while effecting entry to said building and while in said building said defendant knowingly was armed with burglar tools, to-wit: a hammer and a wrench, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.

### "COUNT II

"And as part of the same act and transaction set out in Count I herein, the said LEROY DECHAND on or about the 9th day of January, 1972, in the said County of Douglas and State of Oregon, then and there being, did knowingly and unlawfully commit theft by receiving, retaining, concealing and disposing of certain property belonging to another, to-wit: certain liquor including Scotch whiskey, vodka, gin and Irish whiskey, being the property of the Factory A La Go Go, Roseburg, county and state aforesaid, knowing and having good reason to know that this property was the subject of theft, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

The significant questions presented are: (I) whether the second count is sufficient to charge first degree theft; and (II) whether separate convictions and sentences on both counts are invalid.

I

■ There was evidence that defendant burglarized a bar and stole a quantity of liquor therefrom. There was evidence that defendant thereafter sold some of the stolen liquor. It is the state's theory that defendant's activities following the burglary constitute first

degree theft based on ORS 164.055 (1)(c), which provides:

> "A person commits the crime of theft in the first degree if, by other than extortion, he commits theft as defined in ORS 164.015; and
> "(c) The theft is theft by receiving committed by buying, selling or lending on the security of the property * * *."

Under ORS 164.055 (1)(c) the elements of first degree theft include: (1) that the theft involved was theft by receiving; and (2) that the stolen property was received by buying it, or that the stolen property was sold after being received. The second count of the indictment does allege the theft involved was theft by receiving, but says nothing about the defendant's having sold the stolen property. Is the second count sufficient to charge first degree theft in spite of this omission? We hold it is not.

As originally proposed by the Criminal Law Revision Commission, the only distinction between first and second degree theft was to be the value of the property involved:

> "Section 124. * * * (1) A person commits the crime of theft in the second degree if, by other than extortion, he:
> "(a) Commits theft as defined in section 123 of this Act; and
> "(b) The property is under $250 in value.
> "(2) Theft in the second degree is a Class A misdemeanor.
> "* * * * * *
> "Section 125. * * * (1) A person commits the crime of theft in the first degree if, by other than extortion, he:
> "(a) Commits theft as defined in section 123 of this Act; and

"(b) The property is $250 or more in value.

"(2) Theft in the first degree is a Class C felony." Proposed Oregon Criminal Code, pp 132-33.

The legislature retained the value of the property involved as the basic distinction between the degrees of theft, but changed the dollar amount:

"(1) A person commits the crime of theft in the second degree if, by other than extortion, he:

"(a) Commits theft as defined in ORS 164.015; and

"(b) The total value of the property in a single or aggregate transaction is under $200.

"(2) Theft in the second degree is a Class A misdemeanor." ORS 164.045.

"A person commits the crime of theft in the first degree if, by other than extortion, he commits theft as defined in ORS 164.015; and

"(a) The total value of the property in a single or aggregate transaction is $200 or more; or

"* * * * *

"(3) Theft in the first degree is a Class C felony." ORS 164.055.

However, the legislature reasoned that regardless of the value of the stolen property there are certain circumstances that should aggravate conduct that would otherwise be second degree theft, a Class A misdemeanor, to first degree theft, a Class C felony. *See,* Minutes of the Senate Criminal Law & Procedure Committee, March 5, 1971. Accordingly, the Criminal Law Revision Commission's proposal was amended to provide that any theft would be first degree regardless of the value of the property involved if: (1) it occurred "during a riot * * * or other emergency," ORS 164.055 (1)(b); or (2) the "subject of the theft is a

firearm or explosive," ORS 164.055 (1)(d); or (3) it comes within the receiving by "buying" or "selling" prohibition of ORS 164.055 (1)(c), quoted above.

ORS 164.055 (1) (c) was designed to distinguish between the "casual receiver" and the "professional fence." Minutes of Senate Criminal Law & Procedure Committee, March 5, 1971, p 11. The theory was that the degree of the crime committed by the "casual receiver" should depend upon the value of the property involved, but that the activities of the "professional fence" were so antisocial that such conduct should always be subject to the greater penalties provided for first degree theft regardless of the value of the property involved.[1]

It is thus apparent that buying or selling stolen property is an essential element of first degree theft under ORS 164.055 (1)(c). The state argues this essential element of the crime need not be stated in the indictment, based on our decision in *State v. Jim/White,* 13 Or App 201, 508 P2d 462, Sup Ct *review denied* (1973).

This reads *Jim/White* too broadly. There we held that the use of the word "theft" in an indictment ade-

---

[1] It should be noted that in adopting the amendment that is codified as ORS 164.055 (1)(c), the legislature compromised the goal of consolidation of all of the theft offenses. As we recently observed in State v. Jim/White, 13 Or App 201, 508 P2d 462, Sup Ct *review denied* (1973), the new theft statutes, ORS 164.015 to 164.135, were intended to abolish the subtle and anachronistic distinctions between such crimes as larceny, embezzlement, receiving and concealing stolen property, etc., and, instead, to create a single crime that can be committed in several different ways. Thus, as a general proposition, there are no longer separate crimes of larceny and receiving stolen property; these are now different ways in which theft can be committed. However, in requiring the state to establish that the "theft [involved] is theft by receiving," ORS 164.055 (1)(c) is an exception to the consolidation of the theft offenses.

quately informs a defendant that he is being charged with the act of appropriating the property of another with the intent of substantially interfering with the property rights of the owner. However, we noted the crime of second degree theft was "irrelevant" to the issues there presented, 13 Or App at 209, and thus did not consider any of the distinctions between first and second degree theft.

While "theft" in the sense we used that term in *Jim/White* is one of the elements of both degrees of the crime, the above discussion establishes that there are *additional elements* under ORS 164.055 to the crime of first degree theft. *Jim/White* does not stand for the proposition that the state need not allege such additional elements in a first degree theft indictment. Indeed, the tenor of that opinion is to the contrary in repeatedly stating that an indictment in the language of the statute is sufficient.

This case is more similar to *State v. Bettin/ English/Remling,* 10 Or App 230, 498 P2d 382, Sup Ct *review denied* (1972). That case involved parts of the new criminal code that make possession of more than one ounce of marihuana a more serious offense than possession of less than an ounce. The question presented was whether the indictment had to specify the quantity of marihuana allegedly possessed. We held that it did. In so doing we relied on *State v. Poyntz,* 168 Or 69, 120 P2d 966 (1942), that held a larceny indictment must specify the value of the property stolen when larceny of more than a certain amount is a more serious crime.

■ In the present case, if the defendant sold the stolen property he is guilty, under the state's theory, of first degree theft. ORS 164.055 (1) (c). If the defendant did not sell the stolen property he is only guilty of

second degree theft. ORS 164.045. Just as in *State v. Bettin/English/Remling,* supra, and *State v. Poyntz,* supra, this factor that separates a felony from a misdemeanor must be in the indictment in order to charge a felony.

## II

If the sufficiency of the second count of the indictment were the only issue, we might well reduce defendant's conviction to second degree theft and remand for resentencing. *See, State v. Shirley,* 7 Or App 166, 488 P2d 1401 (1971), Sup Ct *review denied* (1972); *State v. Zadina,* 1 Or App 11, 457 P2d 670 (1969). An additional issue, however, is whether defendant could validly be convicted and sentenced for *both* burglary *and* any degree of theft. We hold separate convictions and sentences are invalid here for several reasons.

(1) Defendant could not have been convicted and sentenced for both burglary based on an intent to commit theft within the burglarized premises and theft committed within the premises. *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971); *State v. Meyer,* 12 Or App 486, 507 P2d 824 (1973). To distinguish *Woolard* and its progeny, the state argues the second count of the present indictment was not based on conduct *within* the burglarized premises—it was based on unrelated conduct days after the burglary.

The state's first problem in arguing the two crimes here charged are unrelated is the language of the indictment stating the crimes were part of "the same act and transaction."

More importantly, the state's argument misconceives the nature of the crime of theft. In general,

proof of the act of taking property and the subsequent act of possessing the same property would establish commission of only one crime—theft (disregarding the two degrees of that crime for present purposes). ORS 164.025 (1); *State v. Jim/White,* supra. Thus, under the new criminal code, theft is a continuing offense. To illustrate, if defendant stole liquor on January 2, as the state's evidence tended to prove, and possessed the same liquor on January 9, as the state's evidence also tended to prove, he would be guilty of *one count* of theft. In general, under the new theft statutes it is not possible to treat defendant's conduct on January 9 as a separate criminal act.

(2) However, as we have stated, n 1, supra, ORS 164.055 (1) (c) is an exception to the general rule; by requiring the state to establish "the theft [involved] is theft by receiving" that limited statute authorizes treating defendant's January 9 conduct as a separate act.

 Nevertheless, *State v. Woolard,* supra, prohibits separate convictions and sentences for defendant's January 2 conduct (burglary based on intent to commit theft) and January 9 conduct (theft by receiving). In that case the Oregon Supreme Court held that the legislature did not intend that a criminal defendant be convicted and sentenced for both burglary and larceny committed within the burglarized premises. If the *Woolard* rule were literally limited to thefts committed within the burglarized premises, as the state argues, then every burglar who left such premises carrying the fruits of his crime could be convicted and sentenced for both burglary and theft by receiving. Given the *Woolard* finding of legislative intent, we cannot conclude the legislature intended a burglar could

also be convicted of theft by receiving. Any other result would be a total emasculation of the *Woolard* rule.

(3) Obviously, before somebody can be guilty of theft on the theory that he committed theft by receiving, he must have "received" the property.

"(1) A person commits theft by receiving if he receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft.

"(2) 'Receiving' means acquiring possession, control or title, or lending on the security of the property." ORS 164.095.

The state's evidence in this case established that defendant committed a theft of some liquor on January 2. Defendant could not thereafter be guilty of any degree of theft by receiving that same liquor because a thief cannot "receive" property from himself. *State v. Carlton,* 233 Or 296, 378 P2d 557 (1963).

Conviction on Count I affirmed; conviction on Count II reversed.