Argued and submitted May 29, affirmed September 25, reconsideration denied November 8, 1985, petition for review denied January 22, 1986 (300 Or 477)

# STATE OF OREGON,
*Respondent,*

*v.*

# ALLAN J. ROSE,
*Appellant.*

## (33516; CA A33769)

706 P2d 583

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendant appeals his conviction for custodial interference in the first degree. ORS 163.257.[1] We affirm.

Amy Gabrielle Rose was born in 1970. Her parents, defendant and Martha Rose, lived in Illinois. In June, 1973, the couple separated, and the mother moved to Oregon with Amy. In December, defendant took Amy back to Illinois. In August, 1974, the mother filed for divorce and reclaimed Amy in Illinois, pursuant to an Oregon temporary custody order and returned with the child to Oregon.

In September, 1974, defendant filed for divorce in Illinois. Service was made by publication after defendant claimed that the mother could not be found. In November, 1974, an Illinois judgment for divorce was entered, granting custody of Amy to defendant.

On December 9, 1974, the mother was granted an Oregon decree of dissolution, giving her custody of Amy. In March, 1975, the Oregon court had granted defendant visitation rights, and on April 5, 1975, defendant picked up Amy in Monmouth, Oregon. He did not return Amy to her mother but

---

[1] ORS 163.257, custodial interference in the first degree, provides:

"(1) A person commits the crime of custodial interference in the first degree if the person violates ORS 163.245 and:

"(a) Causes the person taken, enticed or kept from the lawful custodian to be removed from the state; or

"(b) Exposes that person to a substantial risk of illness or physical injury.

"(2) Expenses incurred by a lawful custodial parent in locating and regaining physical custody of the person taken, enticed or kept in violation of this section are 'pecuniary damages' for purposes of restitution under ORS 137.103 to 137.109.

"(3) Custodial interference in the first degree is a Class B felony."

ORS 163.245, custodial interference in the second degree, provides:

"(1) A person commits the crime of custodial interference in the second degree if, knowing or having reason to know that the person has no legal right to do so, the person takes, entices or keeps another person from the other person's lawful custodian with intent to hold the other person permanently or for a protracted period.

"(2) Expenses incurred by a lawful custodial parent in locating and regaining physical custody of the person taken, enticed or kept in violation of this section are 'pecuniary damages' for purposes of restitution under ORS 137.103 to 137.109.

"(3) Custodial interference in the second degree is a Class C felony."

went to Illinois with his daughter, where he was arrested one month later on an Oregon warrant. He was released when he produced the Illinois divorce decree granting him custody. Defendant and Amy then moved to California. Defendant changed his name and later told his daughter that her mother was dead. Defendant resided with Amy for about nine years in California before he was arrested in May, 1984.

In September, 1975, while Amy was with defendant, the mother was granted an order vacating the Illinois judgment on the basis that the 1974 Oregon decree was valid and that defendant had perpetrated a fraud on the Illinois court by testifying that he was a resident of Illinois and that his daughter resided in Illinois with him.

Defendant claims that the trial court erred in refusing to dismiss the indictment or acquit him, because the charge was not brought within the Statute of Limitations. ORS 131.125 to 131.155. Defendant's argument is that the act of removing the child from the state elevates a custodial interference charge from second to first degree and is thus the act which fixes the date from which the Statute of Limitations begins to run. A felony prosecution must be started within three years from the time the offense is committed, ORS 131.125, and can be tolled for three years when the accused is out of state. ORS 131.145.[2] Thus, the maximum limitation is six years. Because defendant took Amy from her mother and out of the state on April 5, 1975, and the indictment was handed down in June, 1984, he argues that the limitation had run.

■■■ We disagree with defendant's interpretation. Although the time for prosecution runs from the day that an offense is committed, ORS 131.145, custodial interference is a continuing offense. Removing the child from the state is one of the factors which enhances the crime from second to first degree, but it does not change the underlying offense into a discrete act. The offense continues as long as custody is withheld. We agree with the state:

---

[2] Defendant, relying on *State v. Silver*, 239 Or 459, 398 P2d 178 (1965), argues that the first indictment against him, handed down in 1975, does not toll the limitation, because it was dismissed in 1979. Given our holding that the Statute of Limitations starts to run when custodial interference ceases, defendant's argument is irrelevant.

> "Plainly, it would defeat the purpose of [ORS 163.257] to interpret '[c]auses * * * to be removed from the state' as a single act, allow the statute of limitations to run, and permit the crime to lapse into second degree custodial interference after the passage of time. Such an interpretation would, in effect, reward the child-snatcher for extended removal of the child from the state, in direct contravention of legislative intent."

The custodian's rights continue to be violated so long as the child is kept from the custodian. The period of limitation does not begin to run until that interference ceases. Here, although defendant unlawfully kept his daughter from her mother for over nine years, the indictment was brought within a month after the custodial interference ceased.[3]

Defendant next assigns as error the trial court's denial of his motion for judgment of acquittal, because he was entitled to custody of his daughter under the Illinois divorce decree entered in November, 1974. Although the decree was set aside in September, 1975, defendant argues that, on April 5, 1975, the day he took his daughter from Oregon, the decree was valid, entitled to full faith and credit by the Oregon courts. Therefore, he could not commit the crime of custodial interference.

■■ Defendant is mistaken that the Illinois decree was ever valid. In order to have a valid personal judgment, a state must have jurisdiction to subject the parties to its control. If it does not, the judgment is void. *See* Restatement (Second) Judgments § 4. The Illinois court vacated the judgment of divorce, recognizing that Illinois had no personal jurisdiction over the mother or the child. *See* Restatement (Second) Judgments § 10. The order vacating the judgment recites findings that, at the time when defendant obtained the Illinois decree, the mother was a "bona fide" resident of Oregon and had begun divorce proceedings in Marion County. Defendant had appeared in the Oregon proceedings and had obtained

---

[3] Because of our disposition of this assignment of error we need not address defendant's fourth assignment. Defendant's third assignment of error challenges the form of the indictment as duplicitous, because it charges custodial interference in both the first and second degrees. Custodial interference can be committed by alternative means, but only one crime is committed. The conduct constitutes a single offense, and the indictment is not invalid because it charges more than one crime in a single count. *State v. Farmer*, 44 Or App 157, 605 P2d 716 (1980).

Oregon counsel to defend him. Defendant had perpetrated a fraud by testifying that he and his daughter were residents of Illinois. The court held the judgment "for naught," and the Illinois divorce was void *ab initio*. There was, therefore, nothing to which Oregon could give full faith and credit or on which defendant can rely to avoid the criminal charge.

Affirmed.[4]

---

[4] Defendant's final assignment of error, that the trial court erred by establishing a condition of parole, was not preserved at sentencing. The argument has previously been rejected. *See State v. O'Keefe,* 40 Or App 685, 596 P2d 987, *rev den,* 288 Or 81 (1979).