Argued and submitted October 29, 2010, convictions on Counts 2 and 3 reversed and remanded with instructions to enter a judgment of conviction for one count of first-degree theft; remanded for resentencing; otherwise affirmed June 1, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUSTIN LEE McCONVILLE,
*Defendant-Appellant.*

Wasco County Circuit Court
0900013CR; A142165

259 P3d 947

Ingrid A. MacFarlane, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. Justin Lee McConville filed the supplemental brief *pro se.*

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant, who pleaded guilty to one count of first-degree burglary, ORS 164.225, and two counts of first-degree theft, ORS 164.055 (2007), *amended by* Or Laws 2009, ch 16, § 3; Or Laws 2009, ch 610, § 6,[1] appeals from the resulting judgments, assigning error to the trial court's failure to merge the verdicts on the two theft counts into a single conviction under ORS 161.067(3).[2] In a *pro se* supplemental brief, defendant also raises an additional assignment of error regarding the trial court's acceptance of his guilty plea; we reject that assignment without discussion. We review the trial court's ruling on whether to merge the two counts for first-degree theft for errors of law, ORS 138.220, and, for the reasons explained below, reverse and remand those counts for entry of a single judgment of conviction for first-degree theft. We also remand for resentencing; otherwise, we affirm.

The trial court did not make express findings of fact pertaining to the merger issue; consequently, "we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Defendant was charged with one count of first-degree burglary and two counts of first-degree theft. The two theft counts (Counts 2 and 3) each alleged that "on or about January 21, 2009, * * * [defendant] did unlawfully and knowingly commit theft * * *, of the total value of $750 or more, the property of [the husband and wife victims]." Count 2 pertained to the theft of a laptop computer. Count 3 pertained to the theft of "jewelry and other items." Defendant pleaded guilty to all counts, confirming during his plea colloquy that he "stole jewelry and a computer" from the victims' residence.

---

[1] The 2009 amendments to ORS 164.055 apply only to conduct that occurred on or after January 1, 2010.

[2] ORS 161.067(3) provides, in part:

"When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

At defendant's sentencing hearing, the trial court heard testimony from S, one of the victims, who had been present the night of the burglary. According to S, when defendant broke into her residence sometime before 5:00 a.m. on January 21, 2009, she was sleeping alone in an upstairs bedroom and O, her 13-year-old niece, was sleeping in a bedroom on the main floor. S awoke around 5:07 a.m. to find defendant in her bedroom, near her husband's dresser. Defendant told S that he was "extremely high, [and] not to alarm him or do anything that would cause him to hurt [her]." Defendant then asked S where she kept her money and valuables. S told defendant where to find her purse and car keys on the main floor, and defendant said that he had already found those items and did not want them. Defendant proceeded to "go through [the] drawers and find items and * * * ask [S] if [the item] was of value." "At one point," defendant noticed that S was wearing a bracelet and two wedding rings and took those items from her. Thereafter, defendant took the laptop computer that S had by the side of her bed. Defendant then returned to rummaging through S's possessions and questioning S about the value of the items he found.

When defendant was ready to leave the residence, he told S not to move. He also told her that he was "going * * * to go downstairs and go through more things." S told defendant where to find "everything [she] could think of that would be of value" to defendant. Defendant then took S's telephone from her and threw it in another bedroom. S heard defendant go down the stairs and also heard him "ripping the computer cords from the wall." After she thought that she had heard defendant leave, S retrieved her telephone and called the police.

The court, at sentencing, also heard testimony from O and the two officers involved in investigating the burglary.[3] Defendant's Juvenile Parole and Probation Officer and S's husband, who had been out of town the night of the burglary, also testified for the state. The state offered into evidence several pieces of jewelry that the police had recovered following

---

[3] O had been awakened by defendant's activities before he entered S's bedroom. O testified that, at the time, she did not realize that defendant was an intruder or that a burglary was in progress.

the burglary, which included one piece of "real jewelry" that S had placed on the microwave in her kitchen before going to bed, one of the rings that S had been wearing the night of the burglary, and two pieces of costume jewelry that S had kept in the basement; S's other wedding ring and bracelet were not recovered. The state presented no evidence as to the value of the individual pieces of jewelry taken from the residence; thus, the record does not disclose which of those pieces—*viz.*, S's two wedding rings, her bracelet, and the piece of "real" jewelry she had left on the microwave—had an individual or aggregate value of $750 or more.

During his allocution to the court, defendant gave more details about the sequence of events during the burglary and thefts. Most pertinent to the issues in this case, defendant explained that he had entered S's residence through the front door, believing no one was home, and proceeded to look for valuables in the basement. Defendant realized that someone was home when he returned to the main floor. At that point, it appears that defendant went into the room where O was sleeping and then went upstairs to S's bedroom. Significantly, defendant did not specify when he took the piece of jewelry that S had left on the microwave—on his way down to the basement, when he first returned to the main floor, or after he had left S's bedroom before leaving the residence.

During discussions with the trial court about what sentence to impose, defendant's counsel contended that he believed that the theft counts should merge because it was not clear "that one crime ended before the other began." Although the trial court did not state its factual findings on the record, it rejected defendant's understanding, concluding that it "d[id] not believe the convictions merge * * * in the true classic sense into one conviction."

On appeal, defendant contends that there was not a "sufficient pause" between his thefts of the laptop computer and jewelry for the purposes of preventing merger under ORS 161.067(3). The state raises two arguments in response. First, as a preliminary matter, the state argues that, because defendant pleaded guilty to the two theft counts, the judgment on those theft counts is not appealable under ORS

138.050(1). As to the merits, the state argues that the two counts should not merge because each discrete crime of theft was separated by a "sufficient pause" to "afford * * * defendant an opportunity to renounce [his] criminal intent," ORS 161.067(3).

We summarily reject the state's contention that the trial court's entry of two first-degree theft convictions is not an appealable "disposition" under ORS 138.050(1).[4] We recently considered and rejected that same argument in *State v. Bowers*, 234 Or App 301, 306, 227 P3d 822, *rev den*, 348 Or 621 (2010). In that case, like this one, the defendant had pleaded guilty to multiple violations of a single statute and had appealed, assigning error to the trial court's failure to merge those counts under ORS 161.067(3). In holding that the defendant's appeal was allowable under ORS 138.050(1), we stated that "[a] disposition that includes [multiple] convictions where it should only include one conviction contains a disposition that exceeds the maximum allowable by law." *Bowers*, 234 Or App at 306. The same analysis applies in this case and, consequently, defendant's appeal of the judgment is proper under ORS 138.050(1).

We turn, thus, to the merits. As noted, the "anti-merger" statute, ORS 161.067(3), provides, in part:

> "When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, *must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent.*"

---

[4] ORS 138.050(1) provides:

"Except as otherwise provided in ORS 135.335, a defendant who has pleaded guilty or no contest may take an appeal from a judgment or order described in ORS 138.053 only when the defendant makes a colorable showing that the disposition:

"(a) Exceeds the maximum allowable by law; or

"(b) Is unconstitutionally cruel and unusual."

(Emphasis added.) As we have recently explained, a "sufficient pause" is a "temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords a defendant the opportunity to renounce his * * * criminal intent." *State v. Huffman*, 234 Or App 177, 184, 227 P3d 1206 (2010). Further, in *State v. Barnum*, 333 Or 297, 303, 39 P3d 178 (2002), *overruled in part on other grounds by State v. White*, 341 Or 624, 147 P3d 313 (2006), the Oregon Supreme Court noted that, for there to be " 'a sufficient pause in the defendant's criminal conduct[,]' * * * one crime must end before another begins."

We applied ORS 161.067(3) and the standard enunciated in *Barnum* to circumstances analogous to those in this case in *Huffman*. There, the defendant appealed from a judgment that included convictions on two counts of first-degree theft and assigned error to the trial court's failure to merge those counts under ORS 161.067(3). *Huffman*, 234 Or App at 179. Those convictions arose from the defendant's theft of four digital cameras from a warehouse store. *Id.* at 179-80. It appears that, in *Huffman*, the value of each individual camera was less than $750, but that the value of any two of the cameras, collectively, exceeded $750, the statutorily required minimum value for first-degree theft at the time. *Id.* at 181 (applying 2005 version of ORS 164.055(1)(a)). Thus, each of the two first-degree theft counts pertained, or corresponded, to the theft of two of the cameras, collectively. Significantly, there was no evidence in the record as to the precise manner in which the defendant had removed the cameras from the store's shelves to place them in a shopping cart or, later, had secreted them away in his clothing. *Id.* at 180 n 2 ("The record is unclear as to whether defendant sequentially removed each camera from its packaging and placed it in his shirt before removing the next camera from its packaging, or whether defendant collectively removed all the cameras from their packaging before placing them in his shirt."); *id.* at 187 (noting that "there is no evidence whether defendant moved the cameras simultaneously, whether he moved them in pairs, or whether he moved them individually" when he took the cameras from the store's shelves).

Given those circumstances, the defendant in *Huffman* argued that the two counts of first-degree theft should merge "because the four cameras were taken all at once, without a pause in defendant's criminal conduct sufficient to have afforded him an opportunity to renounce his criminal intent." *Id.* at 183. We agreed.

In so holding, we framed the dispositive inquiry as "whether defendant's theft of the first pair of cameras ended before the second theft began[?]" *Id.* at 186. In answering that question in the negative, we began by reiterating that, consistently with *State v. Spears*, 223 Or App 675, 196 P3d 1037 (2008), and *State v. Rocha*, 233 Or App 1, 225 P3d 45 (2009), *rev den*, 348 Or 461 (2010), a theft by taking, for purposes of ORS 164.015(1), is completed upon the movement, however slight, of the item coincident with the requisite criminal intent. *Huffman*, 234 Or App at 186-87. *See also Rocha*, 233 Or App at 8 (holding that the "defendant's movement of the mixer in this case constitutes theft because it coincided with a thieving intent"); *Spears*, 223 Or App at 698 (concluding that "the asportation component of 'takes' in the theft statute, ORS 164.015, is satisfied by any movement of the property, however slight"). We further noted the defendant's concession that his theft of the cameras was complete when he moved the cameras from their original location and placed them in his shopping cart. *Huffman*, 234 Or App at 187.

Nevertheless, and notwithstanding the defendant's concession that he had committed theft of the cameras, we concluded that the record in *Huffman* was inadequate to establish the requisite "sufficient pause" for purposes of ORS 161.067(3). That was so because

> "the record is completely devoid of evidence as to how defendant acquired the cameras; for instance, there is no evidence whether defendant moved the cameras simultaneously, whether he moved them in pairs, or whether he moved them individually. Thus, there is no evidence in this record that one theft ended before the next began."

234 Or App at 187. In an accompanying footnote, we amplified our conclusion:

> "We emphasize the complete absence of evidence on 'sufficient pause' in this record. This is not a record where a

factual inference in favor of the state can be drawn from evidence in the record. *See State v. Barnes*, 209 Or App 332, 334, 147 P3d 936 (2006) (evaluation of merger facts in the 'light most favorable to the state'). Further, even if we were to assume that defendant's criminal intent to take the cameras did not arise until he placed the cameras in his shirt, there is still no evidence in the record of a 'sufficient pause' in defendant's criminal conduct that distinguishes the taking of the first pair of cameras from the taking of the second pair of cameras."

*Id.* at 187 n 6.

The record in this case is similarly deficient. Here, defendant pleaded guilty to two counts of first-degree theft— one predicated on the taking of the laptop computer, and the other predicated on the taking of the jewelry. In order to conclude that there was a "sufficient pause" between the two thefts, the trial court must have implicitly found, at minimum, that defendant's theft of the jewelry (Count 3) had "ended" before his theft of the laptop computer (Count 2) "began." *See id.* 234 Or App at 187. However, there is no evidence in the record supporting such an inference. That is so because (a) as noted, Count 3 pertained to, and encompassed, the taking of at least four pieces of jewelry—*viz.*, the two wedding rings and the bracelet from S's person in her bedroom and the piece of jewelry from the microwave on the first floor; and (b) there is no basis in this record for the court, as trier of fact with respect to merger, to determine whether the taking of the piece of jewelry from the top of the microwave occurred before or after the taking of the laptop, which is the object of Count 2.

In concrete terms, if defendant first took the piece of jewelry from the microwave and then proceeded to S's bedroom, where he took the jewelry from her person before taking the laptop, there might have been the requisite "sufficient pause" between the completed theft of the jewelry and the theft of the laptop to preclude merger; conversely, if defendant took the jewelry from S's person and then took the laptop and *then* proceeded downstairs to where he took the piece of jewelry from the top of the microwave, thus completing the first-degree theft charged in Count 3 at *that* point, the theft of the jewelry would not have been completed before he took the

laptop. On this record, it is impossible to know which of those two scenarios is correct. Here, as in *Huffman*, any "factual inference in favor of the state" in that regard would partake of sheer speculation. *Id.* at 187 n 6.

As the party asserting that defendant's conduct violating ORS 164.055 (2007), as alleged in Counts 2 and 3, is "separately punishable" for purposes of ORS 161.067(3), the state has the burden of adducing legally sufficient evidence of the requisite "sufficient pause." *See generally id.* at 187. It failed to do so. Accordingly, the trial court erred in failing to merge the verdicts on the two first-degree theft counts into a single conviction.

Convictions on Counts 2 and 3 reversed and remanded with instructions to enter a judgment of conviction for one count of first-degree theft; remanded for resentencing; otherwise affirmed.