## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MALCOLM MICHAEL GERLACH,
*Defendant-Appellant.*

Lane County Circuit Court
200901597; A144947

300 P3d 193

David O. Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

In this criminal case, defendant appeals from a judgment convicting him of 10 crimes, including two counts of first-degree kidnapping, ORS 163.235, arguing that the trial court erred in holding that the antimerger statute, ORS 161.067(3), prevented the two kidnapping counts from merging.[1] We review for errors of law, *State v. McConville*, 243 Or App 275, 277, 259 P3d 947 (2011), and conclude that that statute did not prevent the two counts from merging, and, therefore, defendant could properly be convicted of only one count of kidnapping. Accordingly, we reverse the two first-degree kidnapping convictions and remand for entry of a single first-degree kidnapping conviction and for resentencing.[2]

The relevant facts are as follows. Defendant, who was driving a stolen car, intentionally hit the 10-year-old victim while she was riding her bicycle. Defendant forced the victim into the car, drove her to a remote location, parked the car, and sexually assaulted her in the back seat. Then he got back into the driver's seat and drove off, with the victim still in the car, heading toward a forested, mountainous area. Police intervened, knocking the car off the road, and the victim was rescued.

As relevant here, defendant was charged with two counts of first-degree kidnapping.[3] The prosecution's theory was that defendant's act of taking the victim from where he hit her on her bicycle to the location of the sexual assault constituted one kidnapping and that defendant's act of

---

[1] Defendant was convicted of one count of unauthorized use of a vehicle, ORS 164.135, one count of possession of a stolen vehicle, ORS 819.300, one count of second-degree assault, ORS 163.175, two counts of first-degree kidnapping, ORS 163.235, one count of first-degree sodomy, ORS 163.405, one count of first-degree rape, ORS 163.375, one count of attempting to elude a police officer, ORS 811.540, one count of reckless driving, ORS 811.140, and one count of third-degree assault, ORS 163.165.

[2] Defendant also raises a second assignment of error, which we reject without discussion.

[3] Defendant was charged with 12 offenses, including a third count of first-degree kidnapping. The trial court concluded that the third kidnapping count merged into the first kidnapping count, and that conclusion is not at issue on appeal. *See, e.g., State v. Valladares-Juarez*, 219 Or App 561, 184 P3d 1131 (2008) (holding that two counts of first-degree kidnapping involving different aggravating factors under ORS 163.235(1) must merge; failure to merge was plain error).

driving the victim from the location of the sexual assault to the place where she was rescued by the police constituted a second kidnapping.

Defendant stipulated that he committed all of the acts alleged in the indictment. He raised an insanity defense, which was heard by a jury. The jury found defendant guilty.

At sentencing, defendant argued that the two kidnapping counts at issue here should merge. Relying on the antimerger statute, ORS 161.067, the court held that the two counts did not merge because they constituted "repeated violations" of the kidnapping statute and were separated by a "sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent." ORS 161.067(3). It explained, "If [defendant] had time to pull up his pants, get out of the car, get in the car and start driving, he also had sufficient pause to let [the victim] go." Defendant appeals, arguing that ORS 161.067 does not prevent the two kidnapping counts from merging, and, therefore, that he could be convicted of only one count.

Merger is governed by ORS 161.067, which provides:

"(1) When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.

"(2) When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims. * * *

"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent. Each method of engaging in deviate sexual intercourse as defined in ORS 163.305, and

each method of engaging in unlawful sexual penetration as defined in ORS 163.408 and 163.411 shall constitute separate violations of their respective statutory provisions for purposes of determining the number of statutory violations."

Defendant argues, the state concedes, and we agree, that neither ORS 161.067(1) nor ORS 161.067(2) applies here. Consequently, the issue on appeal is whether ORS 161.067(3) prevented the two kidnapping counts from merging.

Defendant argues that he did not commit "repeated violations" of ORS 163.235, which defines first-degree kidnapping, and that, even assuming that there were multiple violations, there was no sufficient pause between violations. A person violates ORS 163.235—that is, commits first-degree kidnapping—by committing a violation of the second-degree kidnapping statute, ORS 163.225, with any of certain enumerated purposes, including causing physical injury to the victim and terrorizing the victim.[4] Thus, in order to determine whether a defendant repeatedly violated ORS 163.235, we must determine whether the defendant's conduct amounted to repeated violations of ORS 163.225, which provides:

"(1) A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a) Takes the person from one place to another; or

---

[4] ORS 163.235 provides:

"(1) A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 with any of the following purposes:

"(a) To compel any person to pay or deliver money or property as ransom;

"(b) To hold the victim as a shield or hostage;

"(c) To cause physical injury to the victim;

"(d) To terrorize the victim or another person; or

"(e) To further the commission or attempted commission of any of the following crimes against the victim:

"(A) Rape in the first degree, as defined in ORS 163.375(1)(b);

"(B) Sodomy in the first degree, as defined in ORS 163.405(1)(b); or

"(C) Unlawful sexual penetration in the first degree, as defined in ORS 163.411(1)(b)."

"(b)   Secretly confines the person in a place where the person is not likely to be found."

The two first-degree kidnapping counts at issue on appeal alleged that defendant, "with the intent to interfere substantially with [the victim's] personal liberty, and without consent or legal authority, did unlawfully take [the victim] from one place to another, with the purpose of causing her physical injury[.]" Thus, we must determine whether defendant repeatedly violated ORS 163.225.[5]

Defendant argues that he committed only one kidnapping because a violation of the kidnapping statute lasts from the time that the victim is taken or confined until the time that the victim escapes or is released—that is, when the victim's personal liberty is restored.[6] In support of his argument, defendant points out that, under ORS 161.067(3), to support separate convictions, "one crime must end before another begins." *State v. Barnum*, 333 Or 297, 303, 39 P3d 178 (2002), *overruled on other grounds by State v. White*, 341 Or 624, 147 P3d 313 (2006); *McConville*, 243 Or App at 281; *State v. Watkins*, 236 Or App 339, 346, 236 P3d 770, *rev den*, 349 Or 480 (2010). Applying that rule, he contends that he took the victim by forcing her into the car, and that her personal liberty was not restored—and, consequently, the first kidnapping did not end—until she was freed by the police.

The state remonstrates that defendant repeatedly violated ORS 163.225 because he took the victim "from one place to another," ORS 163.225(1)(a), more than once. The Supreme Court has held that relatively minimal movement can satisfy that statutory requirement. *See, e.g., State v. Walch*, 346 Or 463, 213 P3d 1201 (2009) (holding that dragging the victim five to 15 feet and throwing her into the trunk of a car satisfied the asportation requirement). Here, the state contends, each of the two takings of the victim

---

[5] On appeal, defendant raises no argument regarding the mental state required to elevate second-degree kidnapping to first-degree kidnapping; nor could he, in light of his stipulation to the conduct alleged in the indictment.

[6] We note that it is possible that a kidnapping victim's liberty may never be restored, as when a defendant kills the victim during the kidnapping. We need not, and, therefore, do not, express any opinion on the duration of a kidnapping in such a circumstance.

that it identifies easily satisfies the asportation element of the statute. The state reasons that "defendant committed a number of acts, each of which alone would constitute a violation of the statute. Therefore, defendant committed multiple violations of the statute."[7] (Footnote omitted.)

Thus, the parties' arguments reduce to a dispute over what is required for one violation of ORS 163.225 to end and a new violation to begin. Defendant contends that the violation—*i.e.*, the kidnapping—continues until the defendant ceases to interfere with the victim's personal liberty; the state responds that a violation ends as soon as the defendant has taken the victim "from one place to another," ORS 163.225(1)(a), and, at that point, the only remaining question is whether there has been "a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent." ORS 161.067(3).

Defendant has the better argument. Kidnapping is, at its core, the abduction of a person. It requires the taking or confining of a person by force, threat, or deception, with the intent to substantially interfere with the person's liberty, specifically, the person's freedom of movement. ORS 163.225(1) (defining kidnapping); ORS 163.215(1) (defining "without consent" for the purpose of the kidnapping statute); *State v. Wolleat*, 338 Or 469, 475, 111 P3d 1131 (2005) ("[T]he liberty interest that the [kidnapping] statute protects from interference is the interest in freedom of movement."). In other words, kidnapping is the unauthorized seizure of a person with the intent to prevent the person's liberation, either by taking the person from one place to another or secretly confining the person in a place where the person is not likely to be found. *See, e.g.*, *State v. Murray*, 340 Or 599, 606, 136 P3d 10 (2006) (carjacker's act of pushing driver onto passenger seat did not constitute kidnapping because, even assuming he had moved the driver from one place to

---

[7] The state also argues that defendant's stipulation to the facts alleged in the indictment controls the question whether defendant's conduct amounted to repeated violations of ORS 163.225. As noted above, merger, including the scope and application of ORS 163.067, is a question of law that we review for errors of law. *See, e.g.*, *Barnum*, 333 Or at 302; *McConville*, 243 Or App at 281. Therefore, defendant's stipulation is not relevant to the question on appeal.

another, there was no evidence that he "tried to *keep* [the driver] in the car" (emphasis in original)).

Because kidnapping is the seizure of a person for the purpose of substantially interfering with the person's liberty, it is a continuing crime. It continues for as long as the seizure continues. Therefore, if a defendant commits the crime of kidnapping by taking a person from one place to a second place, the defendant does not commit an additional kidnapping by moving the person from a second place to a third place. The movement from the second place to the third place is not a second seizure; it is a continuation of the original seizure.

Our cases concerning statutes of limitations confirm that understanding that a new kidnapping offense cannot begin while the defendant remains in control of the victim— that is, while the victim's personal liberty remains interfered with by the defendant. In *State v. Rose*, 75 Or App 379, 706 P2d 583 (1985), *rev den*, 300 Or 477 (1986), we concluded that first-degree custodial interference, ORS 163.257, was a continuing offense. In that case, the defendant was the father of the victim. In April 1975, the defendant picked up the victim, who was then five years old, from her mother in Oregon pursuant to a custody order allowing visitation. *Rose*, 75 Or App at 381. He did not return the victim to her mother; instead, he took her first to Illinois and then, eventually, to California. He changed his name and told the victim that her mother was dead. The defendant and the victim lived in California for approximately nine years, until the defendant was arrested in May 1984. *Id.* at 382.

The defendant was charged with first-degree custodial interference. Like the kidnapping statutes, the custodial interference statutes define the basic crime as a second-degree offense, ORS 163.245, and elevate the crime to first-degree custodial interference by proof of certain additional elements, ORS 163.257.[8] The additional element at issue in *Rose* was the defendant's act of removing the

---

[8] The basic structure of the custodial interference statutes remains the same as it was when *Rose* was decided. However, subsequent amendments have made some changes to the provisions. For clarity, in discussing *Rose*, we quote the statutes as they existed in 1985, when that case was decided.

victim from the state. ORS 163.257(1)(a) (1981); *Rose*, 75 Or App at 382.

ORS 163.245(1) (1981), defining second-degree custodial interference, provided:

> "A person commits the crime of custodial interference in the second degree if, knowing or having reason to know that the person has no legal right to do so, the person takes, entices or keeps another person from the other person's lawful custodian with intent to hold the other person permanently or for a protracted period."

Thus, the elements of second-degree custodial interference were (1) taking, enticing, or keeping another person from the other person's lawful custodian; (2) intent to hold the other person permanently or for a protracted period; and (3) knowledge or reason to know that the defendant has no legal right to do so.

The defendant argued that the trial court had erred in refusing to dismiss the indictment or acquit him because the six-year statute of limitations had expired before the prosecution was commenced.[9] *Id.* at 382. He contended that his crime was complete when he removed the victim from the state because, at that time, he had completed all of the elements of the crime—that is, that in addition to removing the victim from the state, he had (1) taken the victim from her lawful custodian (2) with the intent to hold her permanently or for a prolonged period of time, (3) knowing that he had no legal right to do so. Consequently, he argued, the six-year limitations period began to run on April 5, 1975, and it had expired by the time he was indicted in June 1984.

Thus, the defendant in *Rose* made the same argument that the state makes in the present case: He pointed out that, as of April 5, 1975, he had committed all of the elements of the crime. On that date, he could have been charged with custodial interference. Consequently, he argued, his crime was complete on that date.

---

[9] The statute of limitations for custodial interference is, and, when *Rose* was decided, was, three years. ORS 131.125(6)(a). In *Rose*, the statute of limitations was tolled for an additional three years because the defendant was out of state. ORS 131.145(2)(a); ORS 131.155.

We disagreed. We explained:

"Although the time for prosecution runs from the day that an offense is committed, custodial interference is a continuing offense. Removing the child from the state is one of the factors which enhances the crime from second to first degree, but it does not change the underlying offense into a discrete act. *The offense continues as long as custody is withheld.* * * *

"* * * * *

"*The custodian's rights continue to be violated so long as the child is kept from the custodian.* The period of limitations does not begin to run until that interference ceases. Here, although defendant unlawfully kept his daughter from her mother for over nine years, the indictment was brought within a month after the custodial interference ceased."

*Id.* at 382-83 (citation omitted; emphases added).

The kidnapping statutes share the structure of the custodial interference statutes. The elements of second-degree kidnapping by taking are that a defendant (1) takes another person from one place to another (2) with intent to interfere substantially with that person's personal liberty (3) without consent or legal authority. ORS 163.225(1)(a). As noted above, the additional element that raised the act at issue here to first-degree kidnapping is that defendant had the purpose of causing physical injury to the victim. ORS 163.235(1)(c).

The state points out that all four of those elements were satisfied as soon as defendant forced the victim into the car. Like the defendant in *Rose*, the state argues that the first kidnapping was complete at that time. As a result, the state contends, defendant was able to begin a new kidnapping by beginning to move the victim again after the sexual assault. We disagree. Just as, in *Rose*, the custodial interference continued as long as custody was withheld, in this case, the kidnapping continued as long as the victim's personal liberty was interfered with.

We again discussed the difference between continuing and discrete offenses in *State v. Harelson*, 147 Or App 556, 938 P2d 763, *rev den*, 326 Or 58 (1997). In that

case, the defendant was convicted of a number of crimes arising from his looting of ancient Native American archaeological sites. *Id.* at 588. His acts included taking a large number of artifacts from a site and keeping them in his home and disinterring the bodies of two children, taking artifacts buried with them, and reburying the bodies in his backyard. The defendant appealed, arguing that, as to three of his convictions—one for first-degree theft, ORS 164.055, and two for abuse of a corpse, ORS 166.085—the statute of limitations had expired before the prosecution commenced. *Harelson*, 147 Or App at 559. The state responded that the two crimes were continuing offenses and, consequently, they ended, and the statute of limitations began to run, only after the defendant had relinquished the stolen artifacts and the bodies to the police.

The court considered the statutes defining the two crimes and came to a different conclusion about each. In doing so, it drew a distinction between continuing and discrete offenses. The theft by receiving statute provides, "'A person commits theft by receiving if the person receives, *retains, conceals* or disposes of property of another knowing or having good reason to know that the property was the subject of theft.'" *Id.* at 560 (quoting ORS 164.095(1)) (emphasis in *Harelson*). As to the defendant's theft conviction, the court explained that the crime continued as long as the defendant retained the stolen artifacts.

The state argued that abuse of a corpse was also a continuing offense. It cited *Rose* in support of that argument. *Id.* at 563. In response to that comparison, we explained the distinction between discrete and continuing offenses:

> "The state fails to recognize that the statute defines abuse of a corpse as the performance of specific actions at specific times. Disinterring, removing, or carrying away a corpse are all discrete events that are completed once they have occurred. Treating a corpse in a manner not recognized by community standards can also be a discrete act that occurs at a specific moment. In this case, once the bodies were buried, defendant was no longer treating them in any way; his actions were completed.

> "In contrast, a person who commits custodial interference retains control of the child every day that the interference

continues and thus continually commits the crime, just as a person who retains stolen property continually commits the crime of theft."

*Id.*

Under our reasoning in *Rose*, as further elaborated in *Harelson*, kidnapping is a continuing offense; it is not a discrete act that is complete once a defendant has committed all of the elements of the crime. Like custodial interference, which is committed continually while the defendant retains control of the child, and theft by receiving, which is committed continually while the defendant retains control of the stolen property, kidnapping is committed continually while the defendant retains control of the victim. In other words, kidnapping continues as long as the defendant deprives the victim of his or her personal liberty. Because a single deprivation of the victim's personal liberty is a single violation of ORS 163.225, and, consequently, a single violation of ORS 163.235, merger of defendant's kidnapping counts is not prevented by ORS 161.067(3).

Convictions for first-degree kidnapping reversed and remanded with instructions to enter a single conviction for first-degree kidnapping and for resentencing; otherwise affirmed.